UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**THE AMERICAN HUMANIST ASSOCIATION, INC., et al.,**

 Plaintiffs,

v.                  Case No: 5:14-cv-651-Oc-32PRL

**CITY OF OCALA, FLORIDA, et al.,**

 Defendants.

## ORDER

This matter is before the Court on Plaintiffs' motion to compel responses to interrogatories directed to the City of Ocala and Chief Graham. (Doc. 46). Defendants have filed a response in opposition. (Doc. 47). For the reasons discussed below, Plaintiffs' motion is granted in part and denied in part.

### I. BACKGROUND

As the Court previously explained, this case is about the September 24, 2014 Community Prayer Vigil and whether the City of Ocala, Mayor Guinn, and Chief Graham organized and promoted it in violation of the First Amendment. Specifically, Plaintiffs allege that the Ocala Police Department ("OPD") posted on its Facebook page a letter on its own letterhead, signed by Chief Graham stating that the community was facing a crisis "that requires fervent prayer" and urging community members to attend the Prayer Vigil; that Mayor Guinn sent an email communication in which he refused to cancel the Prayer Vigil and stated "we are trying to promote it;" that the Prayer Vigil was held on the Downtown Square; and that uniformed OPD officials participated in the Prayer Vigil with some officers leading the religious activities.

In response to Plaintiffs' allegations of officer participation at the Prayer Vigil, the City of Ocala and Chief Graham admitted in their Answer that volunteer chaplains for the OPD, "wearing a civilian uniform containing the designation of 'chaplain,' and distinctly different from the uniform worn by sworn officers" participated and spoke at the Prayer Vigil and led the crowd in singing "God Bless America," and changed the words to "God Heal America."  Doc. 38 at ¶¶ 33, 34, 35, 36, 37.

## II.   STANDARDS

Federal Rule of Civil Procedure 33 allows parties to serve interrogatories which relate to any matter that may be inquired into under Rule 26(b).  Pursuant to Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result."  *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, at *1 (M.D. Fla. Oct. 31, 2007) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)).  "Relevancy is determined based on the 'tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.' Fed. R. Evid. 401."  *Hankinson v. R.T.G. Furniture Corp.*, No. 15-81139-civ-Cohn/Seltzer, 2016

WL 1182768, at *1 (S.D. Fla. Mar. 28, 2016) (quoting *Garcia v. Padilla*, No. 2:15-cv-735-FtM-29CM, 2016 WL 881143, at *2 (M.D. Fla. Mar. 8, 2016)).

Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the court is guided by the non-exclusive list of factors in Rule 26(b)(1). *Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-2148-JHH, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Id.* (quoting *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014)).

Objections to discovery must be "plain enough and specific enough so that the court can understand in what way the [discovery is] alleged to be objectionable." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (quoting *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)). Objections to discovery on the grounds that it is overly broad and not relevant are not sufficient; rather, the objecting party should state why the discovery is overly broad or not relevant. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). The objecting party must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Lane v. Capital Acquisitions,* 242 F.R.D. 667, 670 (S.D. Fla. 2005). "Instead, the objecting party must 'show specifically how, despite the broad and liberal construction afforded the federal discovery rules, . . . each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" *Id.* (*quoting Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y.1984)).

**III.   DISCUSSION**

At issue are five interrogatories directed at the City of Ocala focused on the chaplaincy program and one interrogatory directed at Chief Graham regarding his religious affiliation and church membership.  Defendants have objected to these interrogatories as not relevant and not proportional to the needs of the case.

With respect to the chaplaincy program, the following interrogatories are in dispute:

**Interrogatory No. 10:**   State the date/year (approximate) of when OPD began its chaplaincy program, and describe any and all changes that have occurred to OPD policies with regard to chaplains since that date.

**Interrogatory No. 11**:   Please identify and describe the process by which an individual becomes an OPD Chaplain, whether paid or volunteer, and include any and all criteria and required qualifications for the position.

**Interrogatory No. 12:**   Please identify all individuals whose application or request for a position as an OPD Chaplain, whether paid or volunteer, was rejected or declined. Include in your answer: (1) the religious affiliation of said individual; and (2) all grounds for the rejection or denial.

**Interrogatory No. 14**:   Please state the religious affiliation of all current OPD Chaplains.

**Interrogatory No. 15:**   If the OPD has ever had a non-Christian chaplain, please identify all such individuals and state when each such person served as an OPD chaplain, as well as their religious affiliation.

At the most fundamental level, the parties dispute whether information regarding the chaplaincy program is relevant to this lawsuit.  Defendants argue that the requested information is not relevant because the Complaint does not mention the chaplaincy program and the Complaint does not allege the promotion of religion by the OPD in any manner other than the Prayer Vigil. On the other hand, Plaintiffs argue that, "[g]iven the fact that OPD chaplains were allegedly key participants in the Prayer Vigil, leading the public in Christian prayers while wearing OPD chaplaincy uniforms, the interrogatories in question are directly relevant to the issues in this case,

as they would provide background information on the chaplaincy corps that are at the center of the Prayer Vigil."  (Doc. 46 at 3).  Plaintiffs further state that since they claim that OPD and its representatives knowingly and willingly promoted Christianity, "facts providing basic background information on the chaplaincy program and its potential Christian bias would be relevant."  *Id.*

While the Complaint does not mention the chaplaincy program, there is no question that Defendants injected the issue in the case by virtue of their Answer.  As noted above, Defendants admitted that volunteer chaplains for the OPD, "wearing a civilian uniform containing the designation of 'chaplain' and distinctly different from the uniform of sworn officers" participated and spoke at the Prayer Vigil and led the crowd in singing "God Bless America," and changed the words to "God Heal America."  Doc. 38 at ¶¶ 33, 34, 35, 36, 37.  Based on these admissions, Plaintiffs are entitled to some information regarding the chaplaincy program and its relationship to the OPD.  Accordingly, Plaintiffs' motion to compel responses to Interrogatories No. 10 and No. 11 is **GRANTED** to the extent that the City of Ocala shall provide the OPD policies with respect to chaplains in place at the time of the Prayer Vigil, including the process by which an individual becomes an OPD Chaplain and any and all criteria and required qualifications for the position.

However, I agree with Defendants that the remaining interrogatories seek information outside the proper scope of discovery.  Interrogatories No. 12, No. 14, and No. 15 seek information regarding applicants who were rejected from the chaplaincy program as well as information on the religious affiliation of all current chaplains.  Plaintiffs claim that such information will support their theory that the chaplaincy program is actually an "exclusive club" with a "particular Christian view."  However, this case is not about the constitutionality of the chaplaincy corps; rather, the case focuses on whether the City of Ocala, Mayor Guinn, and Chief

- 6 -

Graham organized and promoted the Prayer Vigil in violation of the Establishment Clause. Accordingly, the Plaintiffs' motion to compel responses to Interrogatories No. 12, No. 14 and No. 15 is **DENIED** because the requested information is not relevant to the issue in this case.

Likewise, Plaintiffs' motion to compel Chief Graham to respond to Interrogatory No. 22 – seeking his "current religious affiliation" and the name and address of any church to which he belongs or regularly attends – is **DENIED**.  The requested information does not have a tendency to make Plaintiffs' allegations more or less true that Chief Graham purportedly violated the Establishment Clause by signing the letter posted on the OPD Facebook page stating that the community was facing a crisis "that requires fervent prayer" and urging community members to attend the Prayer Vigil or by having OPD volunteer chaplains participate in or lead the Prayer Vigil.

**DONE** and **ORDERED** in Ocala, Florida on May 13, 2016.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties