**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

Civil Action No. 5:14-cv-00651-TJC-PRL


THE AMERICAN HUMANIST ASSOCIATION, INC.,
ART ROJAS,
FRANCES JEAN PORGAL,
LUCINDA HALE,
and DANIEL HALE,

*Plaintiffs*,

*v.*

CITY OF OCALA, FLORIDA,
KENT GUINN, individually and in his official capacity as mayor of the City of Ocala,
OCALA POLICE DEPARTMENT,
and GREG GRAHAM, individually and in his official capacity as chief of police of the
Ocala Police Department,

*Defendants*.

---

**PLAINTIFFS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM IN SUPPORT**

---

**TABLE OF CONTENTS**

INDEX OF EXHIBITS................................................................................iii

MOTION FOR SUMMARY JUDGMENT ....................................................1

MEMORANDUM OF LAW ........................................................................1

    I.     Question Presented...........................................................................1

    II.    Statement of Undisputed Facts .......................................................1

          A.  Parties .....................................................................................2

          B.  Initiating, Planning, Organizing, and Promoting Prayer Vigil...................3

          C.  Additional Prayer Vigil Complaints...........................................9

          D.  The September 24 Prayer Vigil ..............................................10

          E.  Post-Prayer Vigil Activities and Communications ...................14

          F.  Post-Prayer Vigil OPD Event as Part of Multi-Stage OPD Effort .......................................................................................17

          G.  Procedural History.................................................................18

    III.    Standard of Review.......................................................................18

    IV.    Plaintiffs are entitled to summary judgment against the City because its Prayer Vigil – including the City's actions in initiating, organizing, and promoting it, as well as the participation of uniformed OPD personnel in leading and participating in prayer at the event – violated the Establishment Clause.................................19

          A.  Nominal damages must be awarded if the City violated the Establishment Clause. .............................................................19

          B.  The Prayer Vigil violated the Establishment Clause pursuant to decades of controlling authority and a robust consensus of persuasive authority.................................................................19

          C.  The City's actions in initiating, planning, and promoting a Prayer Vigil violated the Establishment Clause under each prong of the governing *Lemon* test.........................................22

                1.  Prayer Vigil lacked a secular purpose under *Lemon.* ................22

2. The Prayer Vigil had the unconstitutional effect of endorsing and promoting religion, as well as coercing citizens to participate in religious activity, thus failing *Lemon*'s effect prong..............................................25

3. The Prayer Vigil unconstitutionally entangled the City with religion........................................................31

V. Plaintiffs are entitled to summary judgment against the Mayor and Chief because their actions in organizing, promoting, and leading the Prayer Vigil violated the Establishment Clause.........................................32

A. Plaintiffs must be awarded nominal damages against the Mayor and Chief............................................................32

B. Plaintiffs are entitled to punitive damages against the Mayor and Chief due to their flagrant indifference to Plaintiffs' First Amendment rights. ...........................................................33

CONCLUSION.....................................................................35

## PLAINTIFFS' INDEX OF EXHIBITS

Plaintiff Art Rojas's Interrogatory Responses ("Rojas Int.")

Plaintiff Frances (Jean) Porgal's Interrogatory Responses ("Porgal Int.")

Plaintiff Lucinda (Luci) Hale's Interrogatory Responses ("L. Hale Int.")

Plaintiff Daniel (Dan) Hale's Interrogatory Responses ("D. Hale Int.")

Defendant City of Ocala's Interrogatory Responses ("Ocala Int.")

Defendant Greg Graham's Interrogatory Responses ("Graham Int.")

Defendant Kent Guinn's Interrogatory Responses ("Guinn Int.")

Defendant City of Ocala's Supplemental Interrogatory Responses ("Supp. Int.")

Defendant Greg Graham's Supplemental Interrogatory Responses ("Supp. Int.")

Deposition of Greg Graham, excerpted, with highlights ("Graham Dep.")

Deposition of Kent Guinn, excerpted, with highlights ("Guinn Dep.")

Deposition of Art Rojas, excerpted, with highlights ("Rojas Dep.")

Deposition of Frances (Jean) Porgal, excerpted, with highlights ("Porgal Dep.")

Deposition of Lucinda (Luci) Hale, excerpted, with highlights ("L. Hale Dep.")

Deposition of Daniel (Dan) Hale, excerpted, with highlights ("D. Hale Dep.")

Declaration of Katherine Paige and attached Exhibits ("Paige Decl.")

| Exhibit No. | Description | Dep. Exhibit No. |
|---|---|---|
| **Exhibit 1** | OPD Prayer Vigil Letter | *Graham Dep. Ex. 3* *Guinn Dep. Ex. 2* |
| **Exhibit 2** | OPD Prayer Vigil Letter Facebook post Sept. 18, 2014, with comments | *Graham Dep. Ex. 51* |
| **Exhibit 3** | OPD Prayer Vigil Photos | |
| **3-A** | OPD Chaplain Quintana speaking from stage | *Graham Dep. Ex. 58* *Guinn Dep. Ex. 14* |

| 3-B | Uniformed OPD Chaplains speaking from stage | *Graham Dep. Ex. 64*<br>*Graham Dep. Ex. 65*<br>*Guinn Dep. Ex. 20*<br>*Guinn Dep. Ex.  21* |
|---|---|---|
| 3-C | OPD Chaplain Quintana participating in prayer circle on stage and speaking with Prayer Vigil attendee | *Graham Dep. Ex. 60*<br>*Guinn Dep. Ex. 16* |
| 3-D | OPD Chaplain Quintana raising hands and Messianic Rabbi playing shofar | *Graham Dep. Ex. 63*<br>*Guinn Dep. Ex. 19* |
| 3-E | Mayor Guinn speaking with Prayer Vigil attendee | |
| 3-F | Uniformed OPD officer at Prayer Vigil | |
| 3-G | Chief Graham and Prayer Vigil attendee | |
| 3-H | Chief Graham and Plaintiff Rojas | |
| 3-I | Chief Graham and Plaintiff Porgal | *Graham Dep. Ex. 61*<br>*Guinn Dep. Ex. 17* |
| 3-J | Chief Graham and Ocala Atheists poster | |
| 3-K | Prayer Vigil speaker | |
| 3-L | Prayer Vigil crowd | *Graham Dep. Ex. 59*<br>*Graham Dep. Ex. 62*<br>*Guinn Dep. Ex. 15*<br>*Guinn Dep. Ex. 18* |
| Exhibit 4 | Payer Vigil Program | *Graham Dep. Ex. 57* |
| Exhibit 5 | Email from Chief Graham to Captain Edwards & Chaplain Quintana, Sept. 18, 2014, Subject: Prayer Vigil | *Graham Dep. Ex. 19* |
| Exhibit 6 | OPD emails with Prayer Vigil flyer | |
| 6-A | Email from trbito@ocalapd.org to Captain Edwards, Sept. 19, 2014, Subject: what do you think?, with attached Prayer Vigil flyer | |

**6-B**            Email from trbito@ocalapd.org to Captain Edwards,
                   Sept. 19, 2014, Subject: once this is approved I'll
                   send it to Angie [sic], with attached Prayer Vigil
                   flyer with OPD emblem

**Exhibit 7**      Email from Officer Williams to Narvella Haynes,
                   cc: Captain Edwards, Sept. 19, 2014, with attached
                   Prayer Vigil letter and flyer

**Exhibit 8**      Email from trbito@ocalapd.org to Delphine
                   Herbert, Sept. 19, 2014, Subject: A message from
                   Chief of Police

**Exhibit 9**      Email from Mayor Guinn to Chief Graham,          *Graham Dep. Ex. 8*
                   Sept. 21, 2014, Subject: Prayer Vigil            *Guinn Dep. Ex. 4*
                   • Reply email from Chief Graham, Sept. 21

**Exhibit 10**     Email from Chaplain Quintana to OPD Chaplains,   *Graham Dep. Ex. 6*
                   cc: Chief Graham, Sept. 22, 2014, Subject: Urgent *Guinn Dep. Ex. 6*
                   Prayer Service – Wednesday September 24, 2014
                   – 6:30PM at Downtown Square, with attached
                   "Chief Graham Letter"

**Exhibit 11**     Email from Captain Edwards to Chaplain           *Graham Dep. Ex. 28*
                   Quintana, Sept. 22, 2014, Subject: Re: Urgent
                   Prayer Service –Wednesday September 24, 2014-
                   6:30PM at Downtown Square
                   • Reply email from Chaplain Quintana, Sept. 22

**Exhibit 12**     Email from Captain Edwards to Chief Graham, *Graham Dep. Ex. 14*
                   Narvella Haynes & Chaplain Quintana, Sept. 23,
                   2014, Subject: PRAYER VIGIL
                   • Reply email from Chaplain Quintana, Sept. 23  *Graham Dep Ex. 27*
                   • Reply email from Narvella Haynes, Sept. 23
                   • Reply email Captain Edwards, Sept. 23

**Exhibit 13**     Email from Captain Edwards to Major Ford,
                   Sept. 23, 2014, Subject: Staff Meeting

**Exhibit 14**     Email from Captain Edwards to OPD              *Graham Dep. Ex. 15*
                   officials, Sept. 24, 2014, Subject: Fwd: Re:

**Exhibit 15**     Email from Captain Edwards to Captain Edwards,
                   Sept. 24, 2014, with Prayer Vigil speech

**Exhibit 16**      Post-vigil email from Captain Edwards thanking
                    Prayer Vigil organizers, with replies from Narvella
                    Haynes and Chaplain Quintana, Sept. 25, 2014

**16-A**            Email from Captain Edwards to Narvella Haynes &   *Graham Dep. Ex. 13*
                    Chaplain Quintana, cc: Chief Graham, Officer
                    Williams, Sept. 25, Subject: PRAYER VIGIL

**16-B**            Email reply from Narvella Haynes, Sept. 25          *Graham Dep. Ex. 9*

**16-C**            Email reply email from Chaplain Quintana, Sept. 25  *Graham Dep. Ex. 10*

**Exhibit 17**      Email from Chief Graham to Amy Trempler,
                    Sept. 25, 2014, Subject: Fwd: Re: PRAYER VIGIL

**Exhibit 18**      Email from Captain Edwards to Major Ford,   *Graham Dep. Ex. 18*
                    Sept. 29, 2014, Subject: Command Staff

**Exhibit 19**      Email from Captain Edwards to Officer Williams,
                    Narvella Haynes & Chaplain Quintana, Sept. 29,
                    2014, Subject: Meeting – Post Prayer Vigil

**Exhibit 20**      Email from Chaplain Quintana to Captain Edwards,
                    Officer      Williams,      Narvella      Haynes,
                    cc:   Chief   Graham,   Chaplain   Quintana,
                    torygee@dignitymemorial.com,   Oct.   10,   2014,
                    Subject:  Summary  &  Follow-Up  to  Community
                    Meeting with OPD on 10/2/20147 10/9/2014

**Exhibit 21**      Email from Captain Edwards to Major Ford,   *Graham Dep. Ex. 17*
                    Oct. 14, 2014, Subject: Re:

**Exhibit 22**      Email from Captain Corey Taylor to Chief Graham,
                    Oct. 20, 2014, Subject: Re: Today's incident

**Exhibit 23**      Email from Delphine Herbert, Jan. 23, 2015,   *Graham Dep. Ex. 20*
                    Subject: EVERYONE INVITED Saturday, Jan 31,
                    10 a.m. - 12 noon – Addressing Race Relations in
                    Ocala/ Marion County

**Exhibit 24**      Emails between Plaintiff Porgal and Chief Graham

**24-A**            Email from Plaintiff Porgal to Chief Graham, Sept.   *Porgal Dep. Ex. 16*
                    20, 2014, Subject: Prayer Vigil on Downtown
                    Square
                         • Reply email from Chief Graham, Sept. 20

**24-B**        Email from Plaintiff Porgal to Chief Graham,   *Graham Dep. Ex. 11*
               Sept. 22, 2014, Subject: Email
               • Reply from Chief Graham, Sept. 22

**24-C**        Email reply from Chief Graham, Sept. 24, 2014   *Porgal Dep. Ex. 17*
               Subject: Re: Email                              *D. Hale Dep. Ex. 11*

**Exhibit 25**  Email from Plaintiff Luci Hale to Chief Graham,   *Graham Dep. Ex. 54*
               Sept. 22, 2014, Subject: Community Prayer Vigil
               • Reply email from Chief Graham, Sep. 22         *L. Hale Dep. Ex. 3*

**Exhibit 26**  Email from Plaintiff Dan Hale to Chief Graham,   *Graham Dep. Ex. 52*
               Sept. 22, 2014, Subject: Fw: Fwd: Community
               Prayer Vigil
               • Email reply from Chief Graham, Sept. 22        *D. Hale Dep. Ex. 10*
               • Email reply from Dan Hale, Sept. 22

**Exhibit 27**  Email from Plaintiff Porgal to Mayor Guinn, Sept.   *Graham Dep. Ex. 55*
               20
               • Reply email from Mayor Guinn to Porgal,
                 Sept. 20, Subject: Prayer Vigil at Downtown
                 Square
               • Reply email from Plaintiff Porgal, Sept. 20

**Exhibit 28**  Correspondence between Plaintiff Luci Hale
               and Mayor Guinn

**28-A**        Email from Plaintiff Luci Hale to Mayor Guinn,   *Graham Dep. Ex. 12*
               Sept. 22, 2014, Subject: Community Prayer Vigil   *Guinn Dep. Ex. 8*
               • Reply email from Mayor Guinn, Sept. 22
               • Reply email from Luci Hale, Sept. 22

**28-B**        Facebook messages between Plaintiff Luci Hale and   *L. Hale Dep. Ex. 4*
               Mayor Guinn, Sept. 22 & 23, 2014

**Exhibit 29**  Email from Plaintiff Dan Hale to Mayor Guinn,   *Graham Dep. Ex. 52*
               Sept. 22, 2014, Subject: Fw: Fwd: Community
               Prayer Vigil
               • Reply from Mayor Guinn, Sept. 22               *D. Hale Dep. Ex. 11*
               • Reply from Dan Hale, Sept. 22                  *D. Hale Dep. Ex. 12*

**Exhibit 30**  Correspondence between David Niose (American   *Graham Dep. Ex. 53*
               Humanist Association) and Chief Graham

| | | |
|---|---|---|
| **30-A** | Email from David Niose (American Humanist Association) to Chief Graham, Sept. 21, 2014<br>Subject: Constitutional violation | *Graham Dep. Ex. 53* |
| **30-B** | Reply from Chief Graham to David Niose, Sept. 21, 2014 | |
| **30-C** | Reply from David Niose to Chief Graham, Sept. 21, 2014 | |
| **Exhibit 31** | Facebook message complaints sent to OPD, Sept. 19 – 22, 2014 | |
| **31-A** | Facebook message, Kenneth Lawrence Schroeder, Sept. 19 | *Graham Dep. Ex. 50* |
| **31-B** | Facebook message, Georg Kellermann, Sept. 19 | *Graham Dep. Ex. 49* |
| **31-C** | Facebook message, Kristopher Keeney Sept. 20 | *Graham Dep. Ex. 48* |
| **31-D** | Facebook message, Chris Cockerham, Sept. 20 | *Graham Dep. Ex. 47* |
| **31-E** | Facebook message, Adam St Martin, Sept. 20 | *Graham Dep. Ex. 46* |
| **31-F** | Facebook message, Darrin Browne, Sept. 21 | *Graham Dep. Ex. 42* |
| **31-G** | Facebook message, Graham Brooks, Sept. 21 | *Graham Dep. Ex. 45* |
| **Exhibit 32** | Facebook message, John M. Porgal, Sept. 24, 2014<br>• Reply email from Greg Graham, Sept. 24 | |
| **Exhibit 33** | Emails from Paul Tjaden, with reply emails from Mayor Guinn and Chief Graham | |
| **33-A** | Email from Paul Tjaden to Mayor Guinn, Sept. 19, 2014, Subject: letter from Police Chief on official letterhead requesting prayer vigil<br>• Reply email from Mayor Guinn, cc: Chief Graham, Sept. 19 | *Graham Dep. Ex. 40*<br>*Guinn Dep. Ex. 3* |
| **33-B** | Email from Paul Tjaden to Chief Graham, Sept. 22, 2014, Subject: More on your prayer vigil<br>• Reply email from Chief Graham, Sept. 23<br>• Reply email from Paul Tjaden, Sept. 23<br>• Reply email from Chief Graham, Sept. 23 | *Graham Dep. Ex. 40*<br>*D Hale. Dep Ex. 12*<br>*Porgal Dep. Ex. 12* |

| | | |
|---|---|---|
| **33-C** | Email from Paul Tjaden to Mayor Guinn, Sep. 28, 2014, Subject: A similar religious entanglement as yours in Eureka, CA is settled. | |
| | • Reply email from Mayor Guinn, Sept. 28 | |
| **33-D** | Email from Paul Tjaden to Chief Graham, Dec. 29 | |
| **Exhibit 34** | Email from Cat Sullivan to Jeannine Robbins & cmaier@ocalapd.org, Sept. 24, 2014, Subject: OPD LETTERHEAD PROMOTES A Prayer Vigil ON FACEBOOK…Seriously? Can you help set this right for ALL "We, The People"? | *Graham Dep. Ex. 43* |
| | • Reply email from Chief Graham, Sept. 24 | *Graham Dep. Ex. 16* |
| **Exhibit 35** | Email from Bud Laurent to Mayor Guinn, Sept. 22, 2014, Subject: Your Police Department | *Graham Dep. Ex. 5* |
| | • Reply email from Mayor Guinn, cc: Chief Graham, Sep. 22 | *Guinn Dep. Ex. 7* |
| **Exhibit 36** | Email from Pat MacMurray to Chief Graham, Sept. 21, 2014 | *Graham Dep. Ex. 41* |
| | • Reply email from Chief Graham, Sep. 21 | |
| **Exhibit 37** | Email from Plaintiffs Porgal and Luci Hale, Ocala Atheists, to Chief Graham, Sept. 30, 2014 | *Porgal Dep. Ex. 18* |
| | • Reply email from Chief Graham, Oct. 1 | |
| **Exhibit 38** | Email from Patrice Yawn to Chief Graham, relaying phone message from Karen Jungwerth, Sept.19, 2014 | |
| **Exhibit 39** | Email from Scott Thomas to Chief Graham, Sept. 21, 2014, Subject: Stand tall on prayer! | *Graham Dep. Ex. 23* |
| | • Reply email from Chief Graham, Sept. 22 | |
| **Exhibit 40** | Email from Jill Eason to Chief Graham, Sept. 25, 2014, Subject: Proud of your stance | *Graham Dep. Ex. 24* |
| | • Reply email from Chief Graham, Sept. 25 | |
| **Exhibit 41** | Email from Bernie DeCastro to Mayor Guinn, Nov. 17, 2015, Subject: Help Mayor Guinn resist Atheist tonight | *Graham Dep. Ex. 29* *Guinn Dep. Ex. 9* |
| | • Reply email from Mayor Guinn, Nov. 17 | |

**Exhibit 42**    Email from Fred Ewell to Chief Graham, Nov. 29,
Subject: A brief message for Chief Greg Graham,
Ocala Police Department, Fred Ewell to Graham,
Graham response
- Reply email from Chief Graham, Dec. 1

**Exhibit 43**    Email from Shana Mitchell to OPD, Sept. 25, 2014    *Graham Dep. Ex. 32*
- Reply email from Chief graham, Sept. 25

**Exhibit 44**    Email from Diane Reichard to Chief Graham, Ocala
CFO, Oct. 9, 2014
- Email reply from Chief Graham, Oct. 9

**Exhibit 45**    Email from CharMaine Burnett to Chief Graham,    *Graham Dep. Ex. 37*
Sept. 30, 2014

**Exhibit 46**    Email from Jennifer and Keith Lorensen to Chief    *Graham Dep. Ex. 33*
Graham and Mayor Guinn, Sept. 29, 2014,    *Guinn Dep. Ex. 11*
Subject: Thank you for standing up to the Freedom
From Religion Foundation

**Exhibit 47**    Email from Leah Oxendine to Mayor Guinn,    *Graham Dep. Ex. 30*
Nov. 19, 2015, Subject: Prayer vigils – thank you!    *Guinn Dep. Ex. 10*

**Exhibit 48**    Email from Dotty Rispoli to Chief Graham,    *Graham Dep. Ex. 39*
Oct. 2, 2014, Subject: Prayer Walk on Saturday

**Exhibit 49**    Email from Reverend Samuel Smith to Mayor    *Graham Dep. Ex. 38*
Guinn, cc: Chief Graham, rob@hopeinocala.com,
mark@hopeinocala.com & Luci Hale, June 12,
2015, Subject: Congratulations and Thanks for the
Prayer Vigil

**Exhibit 50**    Email from Meltin Bell to Chief Graham & Mayor    *Graham Dep. Ex. 31*
Guinn, Jan. 3, 2015, Subject: Blessings and favor
to you for supporting last year's prayer rally

**Exhibit 51**    Email from Paul Clark to Chief Graham, Sept. 25,
2014,Subject: COMMUNITY PRAYER VIGIL
- Reply email from Chief Graham, Sept. 25

**Exhibit 52**    Additional emails, phone calls, and Facebook
messages sent to OPD in support of the Prayer Vigil

**52-A**    Facebook message, Mary Stone, Sept. 23, 2014    *Graham Dep. Ex. 35*

**52-B**    Phone message, Tommy Exum, Sept. 24, 2014    *Graham Dep. Ex. 36*

| | |
|---|---|
| **52-C** | Phone message, Ted Jasper, Sept. 24, 2014 |
| **52-D** | Email from Laurie Whitaker to Chief Graham Sept. 24, 2014 |
| **52-E** | Email from Robert Douglas to Chief Graham, Oct. 21, 2015 |
| **52-F** | Facebook messages, Zachary Counts, Nov. 26, 2014 |
| **52-G** | Email from Bob Graham to Chief Graham, Dec. 5, 2014 |
| **52-H** | Facebook message, Carrie Tolson, Dec. 22, 2014 |
| **52-I** | Facebook message, Kathy Wilk, July 27, 2015 |
| **Exhibit 53** | Email from Susan Carr, Ocala Star-Banner, to Kathy Crile, OPD Parks & Rec Director, Sept. 24, 2014, Subject: Oct. 4 – God belongs in our city<br>• Reply email from Kathy Crile, Sept. 24<br>• Email forwarded, Sept. 24<br>• Reply email from Jeannine Robbins, Sept. 24 |
| **Exhibit 54** | Reviews on the OPD Facebook page, approximately Sept.– Nov. 2014 |
| **Exhibit 55** | Ocala Star-Banner Letters to the Editor |
| **Exhibit 56** | News reporters requesting comment from OPD and Chief Graham about the Prayer Vigil |
| **Exhibit 57** | News articles about the Prayer Vigil |
| **57-A** | OCALA STAR-BANNER, *Ocala will gather to pray, bring justice*, Sept. 22, 2014 |
| **57-B** | OCALA STAR-BANNER, *Area atheists object to OPD organizing a community prayer vigil,* Sept. 23, 2014 |
| **57-C** | OCALA STAR-BANNER, *Hundreds join in stop-the-violence vigil*, Sept. 24, 2014 |
| **57-D** | WUFT NEWS, *Ocala Community Members Unite at Prayer Vigil*, Sept. 25, 2014 |
| **57-E** | OCALA STAR-BANNER, *Stemming violence takes more than prayer*, Oct. 5, 2014 |

| | | |
|---|---|---|
| **57-F** | OCALA STAR-BANNER, *OPD task force continues to work*, Oct. 7, 2014 | |
| **57-G** | OCALA STAR-BANNER, *'Stop the Violence' rally takes to the streets*, Oct. 18, 2014 | |
| **57-H** | OCALA STAR-BANNER, *Groups sue Ocala, police*, Nov. 25, 2014 | |
| **Exhibit 58** | OPD Chaplain Policy Documents | |
| **58-A** | Chaplain Program | *Graham Dep. Ex. 4*<br>*Guinn Dep. Ex. 5* |
| **58-B** | OPD Organizational Chart | |
| **58-C** | OPD Equipment | |
| **58-D** | OPD Chaplains Program Section Manual, Sept. 2015 | *Graham Dep. Ex. 21* |
| **58-E** | OPD Chaplains Program Section Manual, Sept. 2010 | *Graham Dep. Ex. 22* |
| **58-F** | OPD Directive 1.03 | |
| **58-G** | OPD Directive 1.04 | |
| **58-H** | OPD Directive 2.06 | |
| **58-I** | OPD Directive 2.08 | |
| **Exhibit 59** | Linkedin Profile of Narvella Haynes, *available at*: https://www.linkedin.com/in/narvella-haynes-68724271 | |
| **Exhibit 60** | City of Ocala Special Permit for April 2015 Prayer Vigil | |
| **Exhibit 61** | Sacred Fire Ministries webpage | *Guinn Dep. Ex. 13* |
| **Exhibit 62** | OCALA STAR-BANNER, *Pentecostal Full Gospel Worship Center, local leaders look to future*, July 20, 2015 | *Graham Dep. Ex. 56*<br>*Guinn Dep. Ex. 12* |
| **Exhibit 63** | Ocala City Council meeting minutes, Nov. 17, 2015 | |

## MOTION FOR SUMMARY JUDGMENT

Plaintiffs hereby move for summary judgment on their 42 U.S.C. § 1983 claims seeking relief for violations by Defendants of the Establishment Clause. Plaintiffs specifically seek: (1) nominal damages against the City of Ocala and Mayor Guinn and Chief Graham in their individual capacities; and (2) punitive damages against the Mayor and Chief in their individual capacities; and (3) attorneys fees and costs under 42 U.S.C. § 1988.

## MEMORANDUM OF LAW

"[T]he constitutional prohibition against laws respecting an establishment of religion must at least mean that in this country it is no part of the business of government to compose official prayers for any group of the American people to recite as a part of a religious program carried on by government."
– *Engel v. Vitale*, 370 U.S. 421, 425 (1962)

"We are facing a crisis in the City . . . that requires fervent prayer . . . I am urging you all to please support a very important 'Community Prayer Vigil'"
– *City of Ocala Police Chief*

"Not only are we not canceling it [the Prayer Vigil] we are trying to promote it and have as many people as possible to join us. We open every council meeting with a prayer. And we end the prayer in Jesus name we pray. Our city seal says 'God be with us' and we pray that he is and us with him."
– *City of Ocala Mayor*

"Lord, you brought us together by your spirit, your spirit of Love, and tonight Lord that love can conquer anything. It can conquer evil. It can conquer enemies."
– *Uniformed Police Official at Prayer Vigil*

### I.  Question Presented

The Establishment Clause prohibits a city and its officials from endorsing prayer. The City of Ocala's police department initiated, organized, and led a prayer vigil, with full support and participation of its Police Chief and Mayor. Did their actions violate the Establishment Clause?

### II.  Statement of Undisputed Facts

Prayer is the quintessential religious exercise. The City of Ocala, its Mayor, and Police Chief and staff organized, promoted, and led a Prayer Vigil on September 24, 2014, at 6:30 p.m. on the Downtown Square. (Compl. ¶¶13-43) (Exs. 1-63), and *infra* discussion. Plaintiffs

challenge the Prayer Vigil itself and its avid promotion (using highly religious language) by the City and its officials as violative of the Establishment Clause.

### A. Parties

Defendant City of Ocala ("the City") is a municipality in the State of Florida, within the County of Marion.[1]  Kenneth Gregory Graham ("Chief Graham") serves as Chief of Police of the Ocala Police Department ("OPD"). He is in charge of OPD's day-to-day operations, including but not limited to setting and carrying out policy, managing and supervising staff, and ensuring that department activities comply with applicable law.[2]

Reuben Guinn ("Mayor Guinn") is Mayor of the City, responsible for overseeing day-to-day government operations, including but not limited to ensuring that City activities comply with applicable law.[3]  Mayor Guinn is Chief Graham's supervisor.[4]

Plaintiffs Art Rojas, Frances Jean Porgal, and Lucinda Hale and Daniel Hale, are atheist residents of Ocala and Marion Counties and members of American Humanist Association (AHA).[5] Each Plaintiff personally attended – and had direct unwelcome contact with – the Prayer Vigil and the City's communications endorsing it.[6] Plaintiffs were directly exposed to the City's social media post and letter inviting community members to attend its Prayer Vigil and

---

[1] (Compl. ¶9) (Guinn Ans. ¶9) (Ocala Ans. ¶9)

[2] (Compl. ¶¶11-12) (Guinn Ans. ¶¶11-12) (Ocala Ans. ¶¶11-12)

[3] (Compl. ¶10) (Guinn Ans. ¶10) (Doc. 14 at 2) (Guinn Dep. 8:13-15, 8:23-25, 54:15-18)

[4] (Graham Dep. 161:16-21, 178:23-179:7, 180:3-7) (Guinn Dep. 54:12-55:15) (Ex. 58-B)

[5] (Porgal Int. 5) (Rojas Int. 5) (Compl. ¶¶6-8) (Rojas Dep. 39:1-11, 40:17-22, 73:17-24) (Porgal Dep. 12:1-2, 29:12-19)

[6] (Rojas Ints. 8, 10-12) (D. Hale Ints. 8, 10-12) (Porgal Ints. 8, 10-12) (L. Hale Ints. 8, 10-12); (Porgal Dep. 8:11-12, 13:2-11, 14:11-18, 16:18-21, 17:1-2, 20:3-6, 37:16-17, 38:20-39:3, 40:5-17, 41:6-22, 43:15-16, 47:4-8, 48:7-9, 53:8-22, 54:11-13, 54:22-25, 88:3-14); (Rojas Dep. 9:3-5, 9:22-24, 14:17-25, 15:6-25, 17:11-25, 19:4-12, 21:7-25, 26:14-16, 31:25-32:2, 37:5-7, 38:16-19, 55:5-8, 73:17-25); (L. Hale Dep. 11:9-19, 12:9-15: 18:1-6, 18:9-16, 24:2-6, 25:15-21, 26:5-9, 27:10-14, 27:22-25, 28:1-3, 28:11-25, 29:4-7, 29:24-30:10, 31:22-25, 32:7-15, 32:23-24, 34:21-35:9, 35:14-23, 36:17-37:16, 37:24-38:3, 38:14-17, 39:19-24, 40:1-4, 40:13-14, 41:14-23, 42:2-9, 46:4-9, 48:19-22, 62:3-64:13, 66:5-8, 71:3-20);   (D. Hale Dep. 11:2-22, 12:1-13:13, 16:8-13, 17:18-21, 18:6-9, 22:17-20, 36:18-21, 37:1, 38:4-6, 40:15-19, 42:23-43:22, 44:1-3, 44:11-13, 45:1-46:5, 47:20-22, 48:10-21, 49:4-10, 52:3-5, 53:24-54:2, 56:17-24, 59:3-6, 60:1-2, 68:23-69:5); (Compl. ¶38) (Guinn Ans. ¶38) (Graham Dep. 97:2-14) (Exs. 3- H & I, 57-C, D, & F)

stating that "fervent prayer" was needed to address the City's crime problem.[7] The event was held in downtown Ocala, the "heart of the city," near Rojas' home. (Ex. 1) (Rojas Dep. 6:2-3) (Rojas Int. 8). The Mayor sent an email to Mrs. Hale, informing her that the City was promoting the event. (Ex. 28-A). *See also* (Ex. 24-B) (Chief email to Porgal).

### B.  Initiating, Planning, Organizing, and Promoting Prayer Vigil

The City, through its Police Chief and entire police department, initiated, planned, organized, and promoted a Prayer Vigil with the Mayor's participation and approval. There is no evidence that the Prayer Vigil was sponsored by any entity other than the City. (Graham Dep. 28:6-21). The evidence is all to the contrary, *infra. E.g.* (*Id.* 32:17-25). Both Mayor Guinn and Chief Graham conceded that they were "not aware" of "any entity that was more involved in initiating, planning, or conducting the Vigil than the OPD." (*Id.* 28:6-21) (Guinn Dep. 70:2-10).

On September 17, 2014, an OPD officer initiated the idea for the Prayer Vigil during an official meeting led by Chief Graham held at OPD headquarters.[8] The Chief called the meeting to discuss recent violence in the community. (Graham Dep. 20:4-7). Invited to the meeting were OPD Chaplains Edwin Quintana and Hugh Brockington, sworn OPD officers Captain Richard Edwards, Officer Mary Williams, Major Yonce, and Captain Sirolli, and a single community member, Narvella Haynes.[9] Haynes is associated with the New Zion Missionary Baptist Church.[10] At the meeting, OPD Chaplain Quintana proposed the Prayer Vigil. (Graham Dep. 21:19-22:2, 26:5-8). Chief Graham approved the idea. (*Id.* 23:11-21).

The following day, Chief Graham emailed Captain Edwards and Chaplain Quintana: "*We are going to have the vigil on Thursday night instead of Wednesday due to getting feedback from a lot of ministers that Wednesday is not the best night to do it.*" (Ex. 5) (emphasis added). *See*

---

[7] (Porgal Ints. 2, 9, 13, 15) (L. Hale Ints. 2, 9, 11, 15) (D. Hale Ints. 2, 9, 11) (Rojas Ints. 9, 13); (Porgal Dep. 8:11-12, 13:2-11, 14:11-18, 16:18-21, 17:1-2, 20:3-6, 53:8-22); (Rojas Dep. 9:3-5, 9:22:24, 14:17-25, 17:11-25, 19:1-22, 37:5-7, 55:5-8); (L. Hale Dep. 11:9-19, 12:9-15, 24:2-6, 25:15-21, 26:5-9, 27:10-14, 27:22-28:3, 28:11-25, 31:22-25, 32:7-15); (D. Hale Dep. 11:2-22, 12:1-13, 13:1-13, 16:8-13, 17:18-21, 18:6-9, 22:17-20, 36:18-21); (Exs. 1 & 2)

[8] (Graham Int. 1) (Graham Dep. 21:19-22:2, 26:5-8, 27:1, 27:6-8)

[9] (Graham Int. 1) (Graham Dep. 19:20-21:18) (Ocala Int. 25)

[10] (Ex. 59) (Compl. ¶19) (Doc. 14 at 3)

*also* (Graham Dep. 66:14-67:1). Nonetheless, the Vigil was ultimately held on Wednesday.

Critically, on September 18, OPD posted a letter on its official Facebook page that urged the public to attend the Prayer Vigil, scheduled for September 24. (Exs. 1 & 2).[11] The letter was written on OPD letterhead, with OPD insignia, and signed by Chief Graham and Haynes.[12] The letter read in part:

> Blessings to all our citizens, specifically Pastors, Community Leaders, Parents and our precious youth.
>
> *We* are facing a crisis in the City of Ocala and Marion County that *requires fervent prayer and your presence* to show unity and help in this senseless crime spree that is affecting our communities. . . .
>
> *I am urging you all to please support a very important "Community Prayer Vigil"* that will be held this coming Wednesday, September 24, 2014 at 6:30 pm to be held at our Downtown Square located in the heart of the City.
>
> Please support peace and this appeal for unity on this very important "Community Prayer Vigil" coming this next Wednesday. We need you. [13]

Chief Graham acknowledged he signed the letter and approved its posting.[14] He also admitted that he used OPD resources and staff time to draft and post the letter.[15] Chaplain Quintana prepared the letter for the Chief to sign.[16] The letter was proofread and put into letterhead form by the Chief's assistant.[17] The letter was then scanned and posted by an OPD Sergeant.[18]

Chief Graham admitted that the he "was promoting" the Prayer Vigil by posting the letter on the OPD Facebook page and by putting the word out among OPD Chaplains and ministers. (Graham Dep. 50:2-10). Chief Graham also concedes that the event appeared to many in the community to be an OPD-sponsored event. (*Id.* 67:17-68:11)

---

[11] *See also* (Graham Dep. 29:3-5, 29:6-30:17, 50:4-12, 161:2-9, 168:22-169:10) (Graham Int. 1-2) (D. Hale Int. 2) (Porgal Int. 2) (L. Hale Int. 2) (Ex. 57-G) (Compl. ¶15) (Ocala Ans. ¶15)
[12] (Ex. 1). *See also* (Ex. 2) (Graham Dep. 32:12-16) (Graham Int. 2)
[13] (Ex. 1) (emphasis added) *See also* (Ex. 2) (Compl. ¶19) (Guinn Ans. ¶19) (Ocala Ans. ¶19) (Graham Dep. 29:11-30:17)
[14] (Graham Ints. 1-2) (Graham Dep. 29:6-30:17, 58:18-20)
[15] (Graham Ints. 1-2) (Graham Dep. 161:2-9, 168:22-169:17)
[16] (Graham Ints. 1-2) (Graham Dep. 160:22-161:1)
[17] (Graham Int. 2) (Graham Dep. 161:2-8, 169:2-10)
[18] (Graham Int. 2) (Graham Dep. 169:2-10)

4

In addition to the letter, on September 19 OPD employees created a flyer for the Prayer Vigil. (Exs. 6 & 7). The flyer read in part: "Community Prayer Vigil . . . Join *us* downtown on the square." (*Id.*) (emphasis added). Captain Edwards was sent a copy of the flyer for review. (*Id.*). OPD Law Enforcement Analyst Tina Brito sent a copy of this flyer to Captain Edwards with the subject line, "what do you think." (Ex. 6-A). Another email from Brito to Edwards indicates that she "added the OPD emblem" to the flyer. (Ex. 6-B). The email read: "Once this approved I'll send it to Angie [OPD's Public Information Officer]." (*Id.*). OPD Officer Williams disseminated a copy of the flyer to the public. (Ex. 6-C). See also (Exs. 1 & 8).

Almost immediately after the OPD letter was posted, Chief Graham and Mayor Guinn began receiving a flood of complaints and legal letters warning them of the unconstitutionality of the planned Prayer Vigil.[19] (A sampling of which are described in more detail in the following section.) In particular, Plaintiffs Porgal, the Hales, and AHA each sent emails and letters to the Chief and Mayor.[20] Flouting these numerous warnings, the City and its officials continued to actively promote, organize, and endorse the Prayer Vigil.[21]

On September 21, for instance, the AHA sent an email to Chief Graham advising him that the OPD letter urging "fervent prayer" and promoting the Prayer Vigil was unconstitutional and demanding that it be removed from OPD's Facebook page. (Ex. 30) (Graham Dep. 137:20-25). The Chief responded that day stating that he would not remove the letter. (Ex. 30). It is undisputed the Chief had authority to take down the letter.[22] On September 22, in response to Plaintiff Porgal's emails, Chief Graham insisted, "I have no intention of canceling the event."[23]

On September 22, Chief Graham received an email of support for the Prayer Vigil with the subject line: "Stand tall on prayer!" (Ex. 39). The email stated in part: "I want to congratulate

---

[19] (Exs. 2, 24-36, & 38) (Graham Dep. 33:22-25) (Guinn Dep. 41:17-42:18) (Supp. Int. 22)
[20] (Exs. 24-30, & 37) (Porgal Int. 1) (L. Hale Int. 1) (D. Hale Int. 1) (Porgal Dep. 23:5-6, 23:11-13, 26:19-22) (L. Hale Dep. 32:23-24, 33:23-34:1, 34:21-35:3) (D. Hale Dep. 12:17-18) (Graham Dep. 137:4-18, 138:1-5, 138:13-16, 138:23-139:12) (Guinn Dep. 97:18-22, 98:14-99:20)
[21] (Exs. 9-15, 24-30) (Guinn Dep. 98:14-100:6, 104:12-20) (Graham Dep. 34:4-6, 47:12-21, 48:1-17, 49:24-50:12, 89:10-90:23).
[22] (Graham Dep. 161:10-21, 168:22-169:10). *See also* (Guinn Dep. 54:12-55:4)
[23] (Ex. 24-B) (Graham Dep. 47:12-15)

you for your belief that our God can and will answer the call of the faithful. By some of the responses it is clear there are many people unaware of the power our God has . . . There will always be opposition to Christianity."[24] Graham responded the following day: "I have no intention on calling this gathering off nor changing my personal belief on the power of prayer."[25]

The Mayor also directly promoted the Prayer Vigil and refused to cancel it upon receiving complaints. On September 19, Mayor Guinn stated in an email he would "be sure to praise" Chief Graham for the Prayer Vigil." (Ex. 33-A). On September 22, in response to an email complaint from Mrs. Hale, the Mayor proclaimed:

> There is nothing in the constitution to prohibit *us* from *having* this vigil. Not only are we not canceling it *we are trying to promote it and have as many people as possible to join us. We* open every council meeting with a prayer. And we end the prayer in Jesus name *we pray*. Our city seal says "God be with us" and *we pray* that he is and *us with him*.[26]

Guinn copied the Chief and two local pastors to the email.[27] Mrs. Hale testified regarding the foregoing response to her complaint: "To me if that is not an endorsement of Christianity by a public official, I don't know what would be." (L. Hale Dep. 71:3-20).

That same day, Mayor Guinn responded to a different complaint stating:

> I'm proud to stand by my Chief and support him. Times like this do test *leadership* and that's why *we're* leading the community in this prayer vigil. Yes *we* have heard from folks like you who don't understand the constitution. *We are* doing absolutely nothing wrong.[28]

Mayor Guinn understood OPD was involved in organizing and promoting the Prayer Vigil. (Guinn Dep. 40:2-6, 40:12-16). The Mayor also admitted that he had the authority to ask Chief Graham to take down the letter and the authority to demand that OPD Chaplains not lead prayers or attend the Prayer Vigil in uniform. (*Id.* 54:12-55:15). But he did no such thing. Rather, on September 21, Mayor Guinn emailed Chief Graham: "As I told you, I think this is a great idea

---

[24] (Ex. 39) (Graham Dep. 90:8-12, 113:17-25, 115:20-116:1)
[25] (Ex. 39) (Graham Dep. 90:16-91:3). *See also* (Ex. 34) (Graham letter acknowledging involvement by the "Ocala Police Department and I as the Chief of Police")
[26] (Ex. 28-A) (emphasis added). *See also* (Guinn Dep. 99:1-20) (Graham Dep. 49:7-50:3)
[27] The pastors were from Church of Hope, which Guinn attends. (Guinn Int. 19) (Guinn Dep. 72:12-13)
[28] (Ex. 35) (emphasis added). *See also* (Graham Dep. 36:3-19) (Guinn Dep. 96:13-22)

and have been responding to the atheist groups that are writing me about it. I put it on my calendar to be there." (Ex. 9) (Graham Dep. 42:10-43:6).[29]

Together with the Chief and Mayor, Captain Edwards, a sworn OPD officer, was also heavily involved in planning the Prayer Vigil and setting up the event.[30] Chief Graham even admitted that "Captain Edwards was involved with the Chaplains with the prayer vigil." (Graham Dep. 56:10-24, 57:13-17). OPD Chaplain Quintana was also involved in initiating and planning the vigil. On September 22, Captain Edwards emailed Quintana: "Please send me the name of the Pastors that are praying and their Church name and title." (Ex. 11). Quintana responded: "Rev. Lorenzo Edwards of Mount Moriah Missionary Baptist Church, Pastor Tim Lastinger of the First Assembly of God in Belleview, and Pastor Porfirio Masto of Primera Iglesia Bautista de Marion Oaks will help lead the prayers."[31] Ultimately, five of the ten speakers from the stage at the Prayer Vigil would be uniformed OPD personnel, *infra. E.g.* (Graham Dep. 22:15-20, 28:2-5)

On September 23, Captain Edwards emailed Chief Graham, Chaplain Quintana, Officer Williams, and Haynes, regarding a rainy day plan, suggesting that the Prayer Vigil be held at Mt. Moriah Missionary Baptist Church in the event of rain. (Ex. 12) (Graham Dep. 53:6-54:3). Chaplain Quintana replied: "My two cents is to pray with or without rain on the Square. Nothing should stop, hinder or prevent from fervent prayer. Keep it to 15-20 minutes of PRAYER only." (Ex. 12). Edwards responded: "I guess I was keeping in mind the fair weather Christians and the children that may attend. We should pray that we are Blessed with good weather." (*Id.*).

In a September 23 email to Major Ford, Captain Edwards said he would be "mentioning the Prayer Vigil, tomorrow night" at a regularly scheduled OPD staff meeting. (Ex. 13).[32] In a September 24 email chain between six OPD police officers, Edwards wrote: "I am working on

---

[29] He added: "Your [sic] doing an awesome job running the department I just need to be made aware of what's going on." (Ex. 9).

[30] (Graham Dep. 55:14-56:24, 57:13-17) (Exs. 5-7, 11-17, 18-19)

[31] (Ex. 11) (Graham Dep. 100:14-23). *See also* (Ex. 4). Graham did not think that any of the churches listed in the email were churches attended by the victims or witnesses of the recent shootings. (Graham Dep. 101:14-18).

[32] OPD has weekly staff meetings and a monthly "Command Staff" meeting of OPD's lead supervisors. (Graham Dep. 63:3-64:4)

7

getting this prayer vigil set up." (Ex. 14).

Captain Edwards was also one of five uniformed OPD personnel to speak at the Prayer Vigil.[33] On September 24, Edwards emailed himself the text of his planned speech:

> Good evening everyone. *God is good*, Dios es bueno. I come here this evening wearing a lot of hats, *a police officer*, a parent, a spouse, a son, a brother, a grandfather, a child of God and many others. Most of all I and as many of you come here to call upon *God thru Prayer* . . . We are on their behalf as we'll those who are causing this violence and for our City to be a safe place to live.  (Ex. 15).

It is undisputed that other OPD personnel "took a significant part in planning the vigil."[34] Graham conceded that OPD Chaplains were "absolutely involved." (Graham Dep. 53:20-23).

Significantly, all OPD Chaplains were instructed to be present in uniform at the Prayer Vigil.[35] On September 22, OPD Chaplain Quintana sent an email to all OPD Chaplains, copied to Chief Graham, stating: "Chief Graham asked me to contact all our chaplains and ask you all to be pres[sent] (Please see attached attachment with all detail information) He also asked to please be Dressed up in the Official Chaplains Uniform (White Shirt)." [36] The subject line read: "Urgent Prayer Service – Wednesday September 24, 2014 – 6:30PM at Downtown Square." (Ex. 10).

Heeding these direct orders, OPD Chaplains in fact showed up in uniform at the Vigil with Chief Graham's approval.[37] OPD Chaplains are part of the OPD staff.[38] The OPD Chaplain Program states: "Ocala Police Department chaplains *are official members* of the Ocala Police Department and are members of the *staff* of the Chief of Police in a support capacity."[39]

---

[33] (Ex. 15) (Graham Int. 3) (Graham Dep. 22:7-20, 28:2-5)

[34] (Graham Dep. 23:22-24:9). *See also* (Guinn Dep. 40:2-6, 12-16) (Exs. 3, 5-16)

[35] (Ex. 10) (Graham Dep. 37:3-38:25, 39:10-40:25, 41:11-25, 162:3-17) *See also* (Ex. 3- A & C)

[36] The City claimed in its Interrogatory responses that Chaplains were not even asked to be at the Prayer Vigil (Ocala Int. 8). But Quintana's email, copied to Chief Graham, shows they were not only asked to be there, but that they were instructed to be there in uniform, per Graham's orders. (Ex. 10) (Graham Dep. 37:3-38:25, 39:10-40:25, 41:11-25, 162:3-17).

[37] (Ex. 3) (Graham Dep. 89:16-21, 161:22-162:24) (Rojas Ints. 2, 8) (Porgal Ints. 2, 8) (L. Hale Ints. 2, 8); (D. Hale Ints. 2, 8); (Rojas Dep. 24:4-13, 25:12-25, 30:7-18, 38:12-19); (Porgal Dep. 38:20-25, 40:5-17, 41:6-22, 47:4-8, 54:11-13, 54:22-25); (D. Hale Dep. 42:23-43:22, 44:1-3, 44:11-13, 45:1-46:5, 47:20-22, 48:10-21, 49:4-10, 53:24-25, 56:17-24); (L. Hale Dep. 34:21-35:9, 39:19-40:4, 41:14-23, 42:2-9, 45:12-16, 64:11-13)

[38] (Ex. 58) (Graham Dep. 24:6-9, 24:23-25:4) (Guinn Dep. 21:20-22:3)

[39] (Ex. 58) (emphasis added) (Graham Dep. 24:23-25:4) (Guinn Dep. 68:22-69:5)

Chaplains report directly to the Chief of Police.[40] OPD "Chaplains are covered by Florida Worker's compensation." (Ex. 58). They are also authorized to use department vehicles. (*Id.*).

The City pays for the Chaplains' uniforms.[41] Incidentally, the day after the Vigil, the Chief emailed OPD Support Services Bureau with the subject line, "Fwd: Re: PRAYER VIGIL," to "order [Chaplain Quintana] a pair of pants." (Ex. 17). Graham conceded that uniformed OPD Chaplains would be associated with the OPD. (Graham Dep. 165:23-167:3). *E.g.*, (Porgal Dep. 54:11-25) (perceiving uniformed Chaplains at the Vigil as "officers of the police department").

### C.  Additional Prayer Vigil Complaints

In addition to the complaints described above, the Mayor and Chief received a barrage of other warnings and legal letters about the unconstitutionality of the OPD letter and the Prayer Vigil in the days leading up to the event.[42] Dozens of Facebook comments underneath the OPD's letter note OPD's evident constitutional violation, with many requesting that OPD remove the letter from its official Facebook page. (Ex. 2).  A mere sample of these include:

- Ocala Police Department, I respectfully ask you to remove the letter, put the organization or prayer vigils to community clergy/ leaders and continue policing the best you can with your limited resources and support during these trying times. (Ex. 2, p. 14)

- Please take down your "call to prayer" letter. This is an affront to honest, peace loving, upright citizens of your community, who do not believe in prayer. ALL upright citizens deserve equal consideration of participation toward the betterment of your community. This letter discriminates against those who do not believe in prayer (Ex. 2, p. 9)

- If he was just a citizen holding prayers, he wouldn't be doing it behind the seal, or his public office. (Ex. 2, p. 5)

- I guess you have never heard of separation of church and state. It is one of the laws you are supposed to enforce rather than break. . . . (Ex. 2, p. 8)

- If prayer stopped bullets, I wouldn't wear my vest to work. (Ex. 2, p. 10)

- "I'm not even American, and I know this is a violation of your 1st Amendment. How is it that a US Police Force doesn't know basic US law? (Ex. 2, p. 11)

- Blatantly unconstitutional, hundreds of complaints, yet the Chief still hasn't taken down

---

[40] (Exs. 58- A & D) (Graham Dep. 182:2-5)

[41] (Graham Dep. 169:18-20) (Ex. 58)

[42] (Exs. 2, 24-36, & 38) (Graham Dep. 33:22-25, 34:4-6, 67:23-68:6, 127:17-130:7, 132:16-24, 133:24-139:12) (Guinn Dep. 41:17-42:18, 46:25-47:6, 94:17-96:22) (Compl. ¶¶23, 29-30) (Ocala Ans. ¶¶23, 29-30)

this divisive post." (Ex. 2, p. 12)

The OPD also received similar complaints via Facebook message (Ex. 31) and in the "reviews" section of the OPD Facebook page (Ex. 54).

Despite the numerous vocal objections about the letter and Vigil, Chief Graham never consulted city attorneys or held a meeting with staff to discuss the objections. (Graham Dep. 136:23-137:3). Nor did Mayor Guinn think it was necessary or desirable to consult with counsel. (Guinn Dep. 47:8-17). Guinn knew the Chief's letter was controversial but made no attempt to consult with legal counsel or advisors about it. (*Id.* 27:2-6). The "requires fervent prayer" language did not concern the Mayor, nor did encouraging citizens to attend the "very important prayer vigil." (*Id.* 27:10-20).

### D. The September 24 Prayer Vigil

Fully aware of the Establishment Clause implications, the City proceeded with its Prayer Vigil as planned on September 24, at 6:30pm.  Beyond initiating, organizing, and promoting the Vigil, the City – through uniformed OPD personnel – led, directed, and "vigorously participated" in prayer, worship and proselytization at the Vigil.[43] Representatives of OPD, wearing OPD uniforms with official OPD patches and badges, served as speakers and led prayers.[44] Photos of the Vigil show people praying, including uniformed Chaplains on stage and staff in the crowd.[45]

One uniformed OPD officer, Captain Edwards, and four uniformed OPD Chaplains spoke on stage at the event, including Quintana.[46] An OPD Chaplain was introduced as a "Chaplain

---

[43] (L. Hale Dep. 29:24-30:10, 34:21-35:9, 64:11-13); (Rojas Dep. 24:4-13, 25:12-25, 30:7-18, 38:12-19); (Porgal Dep. 38:20-25, 40:5-17, 41:6-22, 43:15-16, 47:4-8, 54:11-13, 54:22-25); (D. Hale Dep. 45:1-46:5, 47:20-22, 68:23-69:5);   (Exs. 3, 4 & 15) (Graham Dep. 22:15-20, 28:2-5, 139:16-140:11, 147:2-21, 149:5-150:14); (Guinn Dep. 77:12-25, 103:18-104:1, 116:21-117:21, 119:2-16); (Rojas Int. 2); (Porgal Int. 2); (L. Hale Int. 2); (D. Hale Int. 2); (Paige Decl. Exs. A & B); (Ocala Int. 25)

[44] (Ex. 3) (Ex. 15) (Graham Dep. 22:7-20, 28:2-5, 147:2-21) (Guinn Dep. 77:12-16, 103:18-104:1, 116:21-117:21, 119:2-16) (Rojas Dep. 24:4-13, 25:12-25, 30:7-18, 38:12-19) (Porgal Dep. 38:20-25, 40:5-17, 41:6-22, 43:15-16, 47:4-8, 54:11-13, 54:22-25) (L. Hale Dep. 29:24-30:10, 34:21-35:9, 39:19-40:4, 41:14-23, 42:2-9, 45:12-16, 64:11-13) (D. Hale Dep. 43:16-17, 45:11-13, 45:16-18, 45:23-25) (Rojas Int. 2) (Porgal Int. 2) (L. Hale Int. 2) (D. Hale Int. 2) (Paige Decl. Exs. A & B) (Ocala Int. 25) ("Chaplain Brockington . . . attended the event, stood on the stage, spoke, and led a prayer.")

[45] (Exs. 3- A & B) (Ex. 57-D) (Guinn Dep. 116:21-117:21, 119:2-16) (Graham Dep. 147:2-21, 149:5-150:14)

[46] (Exs. 3, 4 & 15) (Graham Ints. 3-4) (Graham Dep. 22:7-20, 28:2-5, 147:2-21) (Guinn Dep. 103:18-

with the City of Ocala Police Department" or something to that effect.[47] Indeed, half of the speakers were OPD personnel.[48] The other half were Christian clerics invited by OPD.[49]

Some of these uniformed officers preached Christianity to the crowd in a revivalist style, enthusiastically praising God, calling for God's assistance, and encouraging verbal participation and responsive chanting from the crowd.[50] They and the crowd engaged in vocal celebratory prayer. There was also physical activity in the prayers, such as raising arms and crying out.[51]

At the start of the event, uniformed police officers joined hands in what appeared to be a prayer circle with citizens and clergy.[52] Mr. Hale observed:

> praying and holding hands with the other citizens and bowing heads. I mean, it was kind of like a tent revival . . . That meant the, you know, the hallelujahs, the hands in the air, the oh, yes, Lord, so on and so forth, you know.[53]

Mrs. Hale described the entire Prayer Vigil as police "employees in uniform on the stage singing, praying, raising their hands like a good old-fashioned down-home revival."[54]

One uniformed OPD speaker spoke to God in a conversational, second-person manner, with statements such as: "Lord, you called us together by your spirit, your spirit of love, and tonight Lord that love can conquer anything. It can conquer evil. It can conquer enemies."[55] During this sermon, other uniformed personnel put hands in the air and bowed their heads solemnly in participation.[56]

Another uniformed police personnel led the singing of "God Bless America" but changed

---

104:1, 116:21-117:21) (Rojas Int. 8) (Porgal Int. 8) (L. Hale Int. 8) (D. Hale Int. 8)
[47] (Porgal Dep. 41:6-19) (D. Hale 59:3-6, 60:1-2)
[48] (Graham Dep. 22:7-20, 28:2-5) (Ex. 3-A) (Ex. 3-B) (Ocala Int. 25) (Graham Ints. 3-4)
[49] (Ex. 11) (Graham Dep. 101:3-18) (Guinn Dep. 116:21-117:21)
[50] (Exs. 3- D & L) (L. Hale Dep. 29:24-30:2) (D. Hale Dep. 45:16-18, 68:23-25) (Graham Dep. 139:23-140:3, 155:2-9) (Guinn Dep. 77:12-25, 103:11-104:1, 116:18-117:21, 119:5-19, 122:18-22) (Paige Decl. Exs. A & B) (Rojas. Int. 8) (Porgal Int. 8)
[51] (D. Hale Int. 8) (Porgal Int. 8) (Rojas Int. 8) (Graham 97:25-99:3, 155:2-9) (Paige Decl. Exs. A &B) (Ex. 3)
[52] (Ex. 3-C) (D. Hale Dep. 45:23-46:5) (Graham Dep. 149:5-12, 149:23-150:18) (Guinn Dep. 119:2-16)
[53] (D. Hale Dep. 45:16-18, 68:23-25) (Graham Dep. 155:2-9)
[54] (L. Hale Dep. 29:24-30:2) (Graham Dep. 155:2-9)
[55] (Paige Decl. Ex. A) (Compl. ¶36) (Ocala Ans. ¶36) (Guinn Ans. ¶36) (Rojas Dep. 43:16)
[56] (D. Hale Dep. 45:16-18, 68:23-25) (Compl. ¶37) (Guinn Ans. ¶37) (Ocala Ans. ¶37) (Porgal Int. 8) (Graham Dep. 155:2-9)

the words to "God Heal America" and prefaced his song with religious comments.[57] In one statement that was especially troubling to Rojas, a preacher thanked the "Lord" and stated "If it has taken this tragedy [of children being shot], if it has taken this shooting Lord, we thank you for that too." (Rojas Int. 8). Many people responded with "amen." (*Id.*).

Photos show uniformed OPD personnel at the Prayer Vigil, including some praying and others speaking.[58] Mayor Guinn conceded that citizens would have seen uniformed OPD Chaplains on the stage praying Christian prayers. (Guinn Dep. 103:18-104:1).

All of the above was done with full authority of the Mayor and Chief, who were present at the event – with the Chief in uniform – and enthusiastically supportive of the religious activity.[59] Chief Graham admitted that the Chaplains participating in the Prayer Vigil were acting in their official capacities pursuant to section 1(B) of the OPD Manual.[60] Mayor Guinn admitted that it would have been within his authority to tell Chief Graham not to have OPD staff lead prayers at the Prayer Vigil. (Guinn Dep. 55:2-15).

Not only did the Mayor not stop uniformed staff from leading prayers, but he personally participated in the prayers said at the Vigil. (Guinn Dep. 109:22-25). He also came dressed in a full suit, looking "mayor-like," and spent his time "glad handing" and talking to constituents.[61] City council members John McLeod and James Hilty also attended the Vigil. (Ocala Int. 24).

Chief Graham conceded that the Prayer Vigil was in fact a predominantly Christian event. (Graham Dep. 97:18-20). Mayor Guinn knew that the Vigil would likely be predominantly Christian. (Guinn Dep. 91:11-23, 92:10). No non-Christian prayers or speeches were delivered. (Graham Dep. 144:13-145:14). All of the speakers were Christian, including all of the OPD

---

[57] (Exs. 3-B & 4) (Compl. ¶35) (Guinn Ans. ¶35) (Ocala Ans. ¶35) (Porgal Int. 8) (Graham Dep. 140:12-14) (Paige Decl. Ex. B)

[58] (Ex. 3) (Guinn Dep. 28:2-3, 116:18-118:2, 119:2-19, 120:4-22, 121:10-122:22) (Graham Dep. 147:2-21, 155:16-156:20)

[59] (Exs. 3- E, G, H & J) (Graham Dep. 139:16-140:14) (Guinn Dep. 77:12-25) (Rojas Ints. 8, 10-11, 13) (D. Hale Ints. 10-11, 13) (Porgal Ints. 8, 10-11, 13) (L. Hale Ints. 10-11) (Rojas Dep. 25:21-22) (L. Hale Dep. 34:21-35:3, 36:17-37:1-16, 38:1-3)

[60] (Graham Dep. 77:20-78:14) (Exs. 58- D & E) (Exs. 3- A, B, C & D)

[61] (L. Hale Dep. 75:10-13, 77:20-23, 78:5-8) (D. Hale Dep. 69:11-14, 72:6-18) (Rojas Dep. 51:7-8)

Chaplains.[62] One was a Messianic Jew, or a "Jew for Jesus," who accepts Jesus as the Messiah, and is associated with a Christian ministry, Sacred Fire Ministries of Belleview.[63] The Chief and Mayor were unaware of any non-Christian clerics who were invited to speak at the Vigil.[64] Yet Ocala is home to numerous non-Christian houses of worship including nearly fourteen Jewish synagogues and temples, at least one Islamic center, and a Buddhist temple.  (Paige Decl. Ex. C). Tellingly, Chief Graham has never even "seen a non-Christian pray." (Graham Dep. 154:1-4, 11).

Moreover, the Prayer Vigil took place on the first evening of Rosh Hashanah, a high Jewish holiday. Customs relating to Jewish Law prevent observant Jews from attending. The City was notified of this fact repeatedly. On September 22, for instance, a citizen wrote to OPD on its Facebook: "Are you aware that the Jewish New Year, Rosh Hashanah, starts on Wed 9/24? Essentially by endorsing this prayer vigil, you are saying Jews need not appear." (Ex. 2, p.16). Likewise, in an email to the Ocala Recreation and Parks Director, dated September 24, a reporter with the Ocala Star Banner wrote: "Tonight, which is Rosh Hashana, is the police chief's prayer vigil. I've been asked if there is only a Christian God." (Ex. 53).

In addition to excluding observant Jews, local atheists felt ostracized by the City's Prayer Vigil. Considering that Mayor Guinn conceded that the Vigil was intended as a means to use prayer to solve the crime problem, non-believers, including the Plaintiffs, understandably felt that they were unable to participate.[65] Consequently, Ocala Atheists, a local group, peacefully protested.[66] Each Plaintiff was present to observe and protest, and personally witnessed the religious activities described above.[67] Rojas, the Hales, and Porgal and her son, each spoke to

---

[62] (Graham Dep. 99:13-16; 144:13-145:14; 157:5-10) (Rojas Dep. 41:9-42:7) (Porgal Dep. 88:3-14)
[63] (Exs. 4, 61 & 62)  (Graham Dep. 141:3-21, 142:9-13, 143:20-144:12, 149:10-22) (Guinn Dep. 110:22-111:23; 115:22-116:5)
[64] (Graham Dep. 100:14-101:8; 144:13-45:14) (Guinn Dep. 28:2-3, 91:11-23, 112:6-8)
[65] (Rojas Int. 15) (D. Hale Int. 15) (Porgal Int. 15) (L. Hale Int. 8) (Porgal Dep. 8:11-12, 13:2-11, 14:11-18, 16:18-21, 17:1-2, 20:3-6, 53:8-22)
[66]  (Ex. 2) (Exs. 57- C, D, & F) (Porgal Dep. 51:9-10)
[67] (Rojas Ints. 8, 10-12) (D. Hale Ints. 8, 10-12)  (Porgal Ints. 8, 10-12)  (L. Hale Ints. 8, 10-12) (Compl. ¶38) (Guinn Ans. ¶38) (Graham Dep. 97:6-8) (Ex. 37) (Exs. 57- C, D, & F) (Porgal Dep. 51:9-10) (L. Hale Dep. 38:14-17) (D. Hale Dep. 40:15-19)

Chief Graham at the Vigil to inform him that his actions were unconstitutional.[68] Following the Vigil, Porgal and Mrs. Hale sent Graham an email reiterating these concerns. (Ex. 37).

The Prayer Vigil lasted about an hour. (Graham Dep. 139:19-22). Police representatives spent virtually no time discussing the crimes that had recently occurred, requesting assistance from the people in whose neighborhoods most of the crime had occurred, or urging those who lived in the area of the crimes to come forward to help address the problem.[69] Instead, the time was spent on prayer and religious activity.

Well over 100 people were present, with some estimates putting attendance at 500-600.[70] Permits are required for events where over 100 people are expected, or where amplified sound is expected, except for City events.[71] No permit was issued for the Vigil, despite the attendance and the fact that amplified sound was anticipated and used. (Graham Dep. 70:20-23) (Ex. 12).

The OPD has never trained its officers on Establishment Clause issues. (Graham Dep. 84:9-20). Nor has Mayor Guinn ever received any training in regards to Establishment Clause issues. (Guinn Dep. 14:21-15:1, 47:18-48:15, 81:1-82:25, 84:1-25, 85:1-3). For instance, the Mayor was unaware of the fact that legislative prayer is considered an exception to Establishment Clause jurisprudence. (*Id.*).

### E. Post-Prayer Vigil Activities and Communications

Chief Graham and Captain Edwards were praised by OPD staff for their efforts in organizing and promoting the Prayer Vigil. On September 25, for instance, an OPD employee applauded Chief Graham for "bringing the community together through prayer." (Ex. 40) (Graham Dep. 91:12-19, 92:1-93:1, 93:8-10). Graham replied using his official OPD email: "stuff like this is easy when you believe." (*Id*). In an email to Graham dated October 20, Captain Taylor wrote: "I too consider myself blessed . . . because my commander-in-chief . . . fully

---

[68] (Rojas Dep. 21:7-24) (Porgal Dep. 39:1-3) (L. Hale Dep. 36:17-37:16, 38:1-3) (Rojas Int. 8) (Ex. 3-H) (Graham Dep. 97:11-12)

[69] (Porgal Int. 8) (Porgal Dep. 48:10-17, 75:21-23) (L. Hale Dep. 35:4-9) (D. Hale Dep. 74:4-20)

[70] (Graham Dep. 148:21-149:3) (Guinn Dep. 109:15-21; 118:23-25) (Exs. 3-L, 57-C, D, E, F, G, & H)

[71] (Graham Dep. 70:25-71:22, 74:15-23) (Guinn Dep. 118:5-25) *E.g.*, (Ex. 60) (Permit for New Life Family Church Prayer Vigil held April 11, 2015)

understands the power of prayer; and recognizes that our help comes from nowhere or no one else but God." (Ex. 22).

Captain Edwards thanked Chaplain Quintana, Haynes, Chief Graham and Officer Williams for their efforts in organizing the Prayer Vigil, in a September 25 email with the subject: "PRAYER VIGIL," as follows:

> I'd like to take just a moment to THANK you two and all who helped and allowed the PRAYER VIGIL to take place. Even though at times there were differences (which I'll personally apologize when I see you) it was great. There was opposition but Isaiah 54:17 says "**No weapon** that is **formed** against thee shall prosper; and every tongue that shall rise against thee in judgment thou shalt condemn." We were Blessed with beautiful weather and a very good overall turnout.  I'd like to meet with you to discuss the next step. Would you be available next Thursday (October 2nd around 10 AM).

> There were many request to continue this sort of Vigil which we will also discuss. Again Thank You. **Romans 8:28** "And we know that **all things work together** <u>for good</u> to them that love God, to them who are the called according to his purpose."[72]

Haynes replied to all: "I want to thank the Chief and staff for listening to my cry and launching into action to make sure it happened."[73] Quintana responded to Edwards:

> Captain Edwards, God bless you Captain for organizing this event and I am honored you invited me. Count me in on the future. A few of my favorite verses are: **John 17:23** I in them and you in me. May they be brought to complete unity to let the world know that you sent me and have loved them even as you have loved me. **Psalm 133:1** How good and pleasant it is when brothers live together in unity! United in mind, The Spirit and in love - we will accomplish much. Have a blessed day Captain. God is Good! Blessings, Reverend Edwin Quintana[74]

At the November 17, 2015, City Council meeting, Mayor Guinn publicly convinced the City to reject a settlement in this case.[75] That day, a Bernie DeCastro emailed Guinn:

> Mayor Kent Guinn, the City Council and police Chief Greg Graham need the support of the Christian community at tonight's City Council meeting. The atheist has filed (or is threatening to file a lawsuit against the City of Ocala for being involved in a recent prayer rally downtown in Ocala. . . . For too long now the silent majority have sat on the sidelines. For the sake of our posterity it is way

---

[72] (Ex. 16) (emphasis in original) (Graham Dep. 43:23-44:22)
[73] (Ex. 16-B) (Graham Dep. 43:23-44:22)
[74] (Ex. 16-C) (Graham Dep. 45:11-18; 46:3-7)
[75] (Ex. 63) (Guinn Dep. 123:1-8, 123:25-124:5)

past time for us to shake the shackles of complacency and apathy and get engaged in the fight. **Please join me tonight in support of our elected officials** *in fighting the enemies of our God.*[76]

The Mayor responded: "God is good!!! All the time. The fight is on. I'm so proud of everyone [sic] of those council members." (Ex. 41). The Mayor testified that he agrees with DeCastro's email that the "Christian community" needs to oppose the atheists who object to the OPD's involvement in the Prayer Vigil.  (Guinn Dep. 101:4-102:1).

In reference to the same meeting, "Marion County resident and Christ-follower" Leah Oxendine emailed Mayor Guinn on November 19, in part: "I just wanted to take a moment to thank you for your courage in encouraging the prayer vigils on the square. It is so refreshing to see political leaders taking a stand for Christianity! It is inspirational when so many of our nation's leaders have decided not to stand up for God."[77]

Significantly, Mayor Guinn believes that it would be acceptable for the OPD to host another Prayer Vigil, and for another letter asking for "fervent prayer" to be posted.[78] He believes that it is acceptable for the government to encourage its citizens to pray.[79] The Mayor further believes that it is acceptable for a police chief to encourage citizens to believe in God or Jesus in a letter with department letterhead.[80]

Many Christian citizens also voiced their support of the Chief and Mayor's actions.[81] Mayor Guinn admitted that he received numerous emails from citizens supporting him for religious reasons. (Guinn Dep. 109:7-11).  One such email, in June 2015, was from a Reverend Sam Smith, who emailed Guinn, copying Chief Graham, two others, and incidentally, Mrs. Hale:

> I want to CONGRATULATE and THANK each of you for your part in doing what was a very necessary thing to help bring God's peace to a city I resided in…. Again, thank each of you for standing for truth and righteousness. If only the church had not stopped preaching against sin and preached for holy living according to "The Gospel as Jesus Christ and His Original Apostles Would Teach

---

[76] (Ex. 41) (emphasis added) (Guinn Dep. 100:25-101:3, 101:19-22, 102:1, 103:3)
[77] (Ex. 47) (Graham Dep. 108:8-21) (Guinn Dep. 107:1-3)
[78] (Guinn Dep. 134:15-135:12)
[79]  (Guinn Dep. 18:3-5). *See also* (Guinn Dep. 16:19-17:16)
[80] (Guinn Dep. 89:11-13, 91:1-5)
[81] (Exs. 39-53) (Graham Dep. 104:4-5, 104:16-105:9; 111:1-25) (Guinn Dep. 109:7-11)

and Preach TODAY," we would not have had the exodus from the church that we have seen. It is not reported in the regular news, but whole Muslim communities are turning to Jesus Christ in 2014,2015, as a result of the Christians they see and meet who exhibit the love, joy, peace and confidence that a life lived according to God's plan. . . . (Ex. 49)

Chief Graham similarly received letters from the public indicating that they perceived the Vigil as City-sponsored and Christian.[82] Several days after the Vigil, for instance, CharMaine Burnett emailed Graham in part: "I fully support what you are doing and It takes a lot of courage to realize that there are many things that are out of our hands and we need some divine intervention. Obviously, I am a Christian and I strongly believe in the power of prayer." (Ex. 45).

And like Mayor Guinn, Chief Graham was impenitent to the clearly voiced Establishment Clause concerns, expressing if anything, satisfaction for his actions. For example, in response to a support email from a Fred Ewell dated November 29, 2014, Chief Graham declared: "As I have told others, if people are going to complain about me, I can't think of a better complaint than they don't like that I pray." (Ex. 42).

Reporters contacted the Chief with the understanding that he was in charge of the Prayer Vigil. (Ex. 56). And the Mayor also appeared on Fox News to discuss the Prayer Vigil and the controversy surrounding it. (Guinn Dep. 66:22-67:1).

### F. Post-Prayer Vigil OPD Event as Part of Multi-Stage OPD Effort

The Prayer Vigil was the first stage of a multi-stage OPD effort. (Graham Dep. 60:17-62:5) (Exs. 18-21). OPD held a second event, a community march, on October 18. (*Id.*). After noting that the Prayer Vigil was "well attended," Captain Edwards's September 29 "Command Staff" email stated: "Meeting on Thursday at 1100 with Narvella Haynes and Chaplain Quintana reference next step." (Ex. 18). Another email from Edwards to Major Ford refers to the march as "the 2nd stage from the Prayer Vigil." (Ex. 21) (Graham Dep. 60:17-61:21, 122:4-8).  An Ocala Star-Banner article described the October 18 march as "the third in a series of rallies that kicked off late last month with a prayer vigil held in the downtown square, which was attended by leaders from the Christian community and hundreds of people." (Ex. 57-G).

---

[82] (Exs. 39-40, 42-46, 48, 50-52)

According to Chief Graham, Chaplain Quintana and "more or less the same people who had organized the prayer vigil" organized the march. (Graham Dep. 61:2-11). *See also* (Exs. 19 & 20). On September 29, Captain Edwards emailed Officer Williams, Haynes, and Chaplain Quintana, with the subject line "Meeting – Post Prayer Vigil," stating: "Reference to the continued meetings – lets try to meet at 11 on Thursday at the Police Dept. to discuss next event - strategy." (Ex. 19). On October 1, Quintana forwarded this email chain to Chief Graham, stating: "Meeting at OPD tomorrow at 11am – Followup to Prayer Vigil. Can you make it?" (Ex. 19). An email sent October 10 from Quintana to Captain Edwards, Officer Williams, Haynes, copying Chief Graham and a Tory Gee from Dignity Memorial, with a "Summary & Follow-Up" to the "Community Meeting[s] with OPD" held on October 2 and October 9. (Ex. 20). Chaplain Quintana signed off the email "with abundant blessings from Our Lord[.]" (Ex. 20).

### G. Procedural History

Plaintiffs filed their Complaint on November 24, 2014. (Doc. 1). On January 6, 2015, Defendants filed a motion to dismiss. (Doc. 8). On July 3, the Magistrate Judge issued an opinion recommending that Defendants' motion be denied as to the individual Plaintiffs' claims for nominal damages against the City, and Mayor and Chief in their individual capacities. (Doc. 14). On August 31, 2015, the Court adopted said opinion. (Doc. 22). Specifically, the Court held that the City could be found liable for the Establishment Clause violations under 41 U.S.C. § 1983 and that the Mayor and Chief were not entitled to qualified immunity. (Doc. 14 at 22 & 24). Defendants did not appeal this decision.

### ARGUMENT

### III.  Standard of Review

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The material facts are undisputed and Plaintiffs are entitled to judgment as a matter of law, *infra*.

IV.   **Plaintiffs are entitled to summary judgment against the City because its Prayer Vigil – including the City's actions in initiating, organizing, and promoting it, as well as the participation of uniformed OPD personnel in leading and participating in prayer at the event – violated the Establishment Clause.**

A.  **Nominal damages must be awarded if the City violated the Establishment Clause.**

The Supreme Court "obligates a court to award nominal damages when a plaintiff establishes the violation of [a constitutional right]." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). Thus, "an award of nominal damages is *mandatory* upon a finding of a constitutional violation." *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) (emphasis added).[83]

By "making the deprivation of such rights actionable for nominal damages . . . the law recognizes the importance to organized society that those rights be scrupulously observed." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). "Perhaps even more important to society, however, is the ability to hold a municipality accountable." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317-18 (2d Cir. 1999). Nominal damages also "encourage the municipality to reform the patterns and practices." *Id.* Nominal damages often serve their most important function in "one-time" situations. The "rationale for the award of nominal damages being that federal courts should provide some marginal vindication for a constitutional violation." *Price v. City of Charlotte*, 93 F.3d 1241, 1246 (4th Cir. 1996). It is "a way of communicating an important result in many cases[.]" *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 460 (7th Cir. 2010).

As shown in the following sections, the City's actions surrounding the Prayer Vigil—and not just in allowing uniformed officers to participate and even lead prayers at the Vigil, but also in initiating, planning, organizing the event, and in promoting it with a public letter declaring the need for "fervent prayer" and urging all to attend—violated the Establishment Clause, making nominal damages mandatory in this case.

B.  **The Prayer Vigil violated the Establishment Clause pursuant to decades of controlling authority and a robust consensus of persuasive authority**

The Establishment Clause "commands a separation of church and state." *Cutter v.*

---

[83] *See KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1262 (11th Cir. 2006); *Caban-Wheeler v. Elsea*, 71 F.3d 837, 841-42 (11th Cir. 1996) (award of nominal damages was required)

*Wilkinson*, 544 U.S. 709, 719 (2005). It requires the "government [to] remain secular, rather than affiliate itself with religious beliefs." *Cnty. of Allegheny v. ACLU*, 492 U.S. 573, 610 (1989). Not only must the government not endorse, advance, promote, affiliate with, or favor any particular religion, it "'may not favor religious belief over disbelief.'" *Id.* at 593 (citation omitted).

To comply with the Establishment Clause, government action must pass the *Lemon* test, [84] pursuant to which it must: (1) have a secular purpose; (2) not have the effect of advancing or endorsing religion; and (3) not foster excessive entanglement with religion. *Id.* at 592. Government action "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987). As shown below, the Prayer Vigil violates the Establishment Clause under *each* prong, as well as analogous precedent.

The jurisprudence analyzing similar practices is decidedly against the City. The Supreme Court has repeatedly held that government-sponsored prayer violates the Establishment Clause. *E.g.*, *Engel v. Vitale*, 370 U.S. 421, 430 (1962) ("government in this country . . . is without power to prescribe by law any particular form of prayer . . . in carrying on any program of governmentally sponsored religious activity.").[85] Indeed, courts have consistently held that prayer at any government-sponsored event violates the Establishment Clause, including at a:

- city-sponsored festival[86]
- police-department meeting[87]
- city-sponsored memorial prayer ceremony[88]
- mayor's community prayer breakfast[89]
- military institute[90]
- courtroom[91]

---

[84] The test is derived from *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971).
[85] *See also Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301-03, 308 (2000); *Lee v. Weisman*, 505 U.S. 577, 592 (1992)
[86] *Doe v. Village of Crestwood*, 917 F.2d 1476 (7th Cir. 1990)
[87] *Marrero-Méndez v. Pesquera*, 2014 U.S. Dist. LEXIS 116118, 1-2 (D.P.R. Aug. 19, 2014)
[88] *Hewett v. City of King*, 29 F. Supp. 3d 584, 596, 636 (M.D.N.C. 2014)
[89] *Newman v. City of East Point*, 181 F. Supp. 2d 1374 (N.D. Ga. 2002)
[90] *Mellen v. Bunting*, 327 F.3d 355, 367-69 (4th Cir. 2003)
[91] *N.C. Civil Liberties Union v. Constangy*, 947 F.2d 1145, 1150 (4th Cir. 1991)

Even a nondenominational prayer on a state map, which had limited distribution and could "seem utterly innocuous," violated the Establishment Clause. *Hall v. Bradshaw*, 630 F.2d 1018, 1019-21 n.1 (4th Cir. 1980). Additionally, a county violated Establishment Clause by its sheriff inviting a religious group to speak at a sheriff's department leadership conference. *Milwaukee Deputy Sheriffs' Ass'n v. Clarke*, 588 F.3d 523, 524-26 (7th Cir. 2009).

The only exception to this long line of cases essentially creating a *per se* rule against government-sponsored prayer is "legislative prayer," which this Court already properly determined is "not at issue here." (Doc. 14 at n.8). It is therefore undeniable that the City's Prayer Vigil violated the Establishment Clause.

Indeed, this Court already correctly found that the City's "conduct 'lies so obviously at the very core of what the [Establishment Clause] prohibits that the unlawfulness of the conduct was readily apparent," even in the absence of "'fact-specific law.'" (Doc. 14 at 23-24) The Establishment Clause prohibits the government from promoting "a point of view in religious matters" or otherwise taking sides between "religion and religion or religion and nonreligion." *McCreary Cty. v. ACLU*, 545 U.S. 844, 860 (2005) (citations omitted). As "the quintessential religious practice," the state cannot advance prayer without violating the Establishment Clause. *Jaffree v. Wallace*, 705 F.2d 1526, 1534 (11th Cir. 1983), *aff'd* 472 U.S. 38 (1985).

This Court cogently declared: "No factually particularized, pre-existing case law was necessary for it to be obvious to local government officials that organizing and promoting a Prayer Vigil would violate the Establishment Clause." (Doc. 14 at 24). Notably however, City officials went far beyond *organizing* and *promoting* a Prayer Vigil:

- The Police Chief, in official uniform, *participated* in the Prayer Vigil
- Uniformed police personnel *participated* in the Prayer Vigil
- Uniformed police personnel *actually led the prayers* at the Prayer Vigil
- Uniformed police personnel *evangelized* at the Prayer Vigil
- Uniformed police personnel *led the singing* of "God Bless America" (with wording changed to "God Heal America") at the Prayer Vigil
- The Mayor, who was present at the Prayer Vigil, authorized the above actions

Because the City violated the Establishment Clause at "the most fundamental level," (Doc. 14 at 24) no additional analysis is even necessary. But for the sake of argument, Plaintiffs demonstrate below that the Prayer Vigil failed *each* prong of the *Lemon* test, even when only one is sufficient, leaving this Court no choice but to grant summary judgment to Plaintiffs.

C. **The City's actions in initiating, planning, and promoting a Prayer Vigil violated the Establishment Clause under each prong of the governing *Lemon* test.**

1. **The Prayer Vigil lacked a secular purpose under *Lemon*.**

Where, as here, a government sponsors an "intrinsically religious practice" such as prayer, it "cannot meet the secular purpose prong." *Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 830 (11th Cir. 1989). *See Santa Fe*, 530 U.S. at 309.[92] The secular purpose must be the "pre-eminent" and "primary" force driving the action, and "has to be genuine, not a sham[.]" *McCreary*, 545 U.S. at 864. "When a state-sponsored activity has an overtly religious character, courts have consistently rejected efforts to assert a secular purpose for that activity." *Mellen*, 327 F.3d at 373.

It is undisputed that prayer – and specifically "fervent prayer" – was the purpose of the Prayer Vigil.[93] The Mayor readily concedes that the primary purpose of the event was for prayer.[94] Because "prayer is 'a primary religious activity in itself,'" the City's "intent to facilitate or encourage prayer . . . is *per se* an unconstitutional intent to further a religious goal." *Holloman v. Harland*, 370 F.3d 1252, 1285 (11th Cir. 2004).[95]

No avowed secular purpose can overcome the Prayer Vigil's inherent religious purpose. Attempting "to further an ostensibly secular purpose through avowedly religious means is considered to have a constitutionally impermissible purpose." *Id.* at 1286.[96] For instance, in *Holloman*, the Eleventh Circuit held that even though a teacher's purpose in conducting prayers was to show "that praying is a compassionate act," such "an endorsement of an intrinsically

---

[92] *See also Stone v. Graham*, 449 U.S. 39, 41 (1980) (holding that "[t]he Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact.")

[93] (Ex. 1) (Graham Dep. 87:9-88:5) (Guinn Dep. 76:18-77:7, 93:2-4, 94:10-15)

[94] (Guinn Dep. 76:18-77:7, 93:2-4, 94:10-15)

[95] *Accord Jaffree*, 705 F.2d at 1535; *Constangy*, 947 F.2d at 1150

[96] *See Sch. Dist. Abington v. Schempp*, 374 U.S. 203, 222-23 (1963)

religious activity" fails the purpose test. *Id.* Likewise, in *ACLU v. Rabun Cnty. Chamber of Commerce, Inc.*, the court held that even if the "purpose for constructing the cross was to promote tourism," the "government may not 'employ religious means to reach a secular goal.'" 698 F.2d 1098, 1111 (11th Cir. 1983) (citation omitted).

The same principle was applied in *Gilfillan v. Philadelphia*, where the Third Circuit held that a city failed the purpose prong by funding a platform for the Pope's visit. 637 F.2d 924, 927-30 (3d Cir. 1980). It was irrelevant that the service "generated an unprecedented outpouring of warmth and good will felt throughout the City for months following," and "favorably enhanced the image of the City." *Id.* The court reasoned that "if some peripheral public relations benefit can constitute a sufficient secular purpose, then the purpose test is destroyed." *Id.*

This Court therefore correctly rejected the City's "argument that the Prayer Vigil had a secular purpose because it was intended 'to support peace'" because the "'unmistakable message of the Supreme Court's teachings is that the state cannot employ a religious means to serve otherwise legitimate secular interest.'" (Doc.14 at 19) (citing *Jager*). Such a "needless use of means that are inherently religious makes a message of endorsement likely if not unavoidable." *Jewish War Veterans v. U.S.*, 695 F. Supp. 3, 14 (D.D.C. 1988). Chief Graham even conceded that there are other ways of engaging the community that do not involve fervent prayer. (Graham Dep. 30:9-17, 87:9-25-88:1-5).

Additionally, if the "stated purpose is not actually furthered . . . then that purpose is disregarded as being insincere or a sham." *Church of Scientology Flag Serv. v. City of Clearwater*, 2 F.3d 1514, 1527 (11th Cir. 1993). *See Edwards*, 482 U.S. at 589. The entire one-hour Prayer Vigil consisted of sermons, prayers, and religious songs. (Graham Dep. 139:19-25-140:1-14). Police representatives spent no time discussing the crimes that had recently occurred or urging those who lived in the area of the crimes to come forward to help address the problem. (Porgal Int. 8). Moreover, City officials could point to no peer-reviewed studies supporting the efficacy of prayer in solving crime. (Guinn Dep. 136:11-14). Both the Chief and the Mayor admitted they do not know of any other police department that had solved violent crime by

calling for fervent prayer. (*Id.* 74:19-22) (Graham Dep. 131:16-24). Such facts seriously belie any supposed secular purpose in combatting crime.

   Of course, even if prayer could be used to solve violent crime, the City's use of such religious means to achieve a secular goal reflects an unconstitutional religious purpose, *supra*. *E.g.*, *Hall*, 630 F.2d at 1021 ("motorist's prayer" on state maps failed purpose test, even though purpose was to promote motorist "safety," which court did not dispute, because "the state has chosen a clearly religious means to promote its secular end.").

   Because the Prayer Vigil was "patently religious," the Court need not resort to extrinsic evidence to determine whether there was any other purpose. *McCreary*, 545 U.S. at 864. *E.g.*, *Summers v. Adams*, 669 F. Supp. 2d 637, 658-60 (D.S.C. 2009). The City's religious purpose is "so clear that the court [should] find it controlling even if there were evidence of some other stated legislative purpose." *Id*. But there is no evidence of any other purpose. Instead, extrinsic evidence further suggests "a desire to promote Christianity." *Id.* Among other things:

- Chief Graham told the public "fervent prayer" was necessary[97]
- Only Christian clerics and Chaplains were invited to speak at the Prayer Vigil[98]
- Mayor Guinn knew that the vigil would likely be predominantly Christian (Guinn Dep. 91:11-17, 91:20-23)
- Captain Edwards stated in an email to other OPD personnel that he "was keeping in mind the fair weather Christians and the children that may attend. We should pray that we are Blessed with good weather." (Ex. 12) (Graham Dep. 95:17-96:6)
- OPD Chaplain Quintana remarked: "My two cents is to pray with or without rain on the Square. Nothing should stop, hinder or prevent from fervent prayer. Keep it to 15-20 minutes of PRAYER only" (Ex. 12)
- Mayor Guinn averred that the "Christian community" needs to oppose the atheists who object to the OPD's involvement in the Prayer Vigil (Guinn Dep. 60:23-61:13, 107:1-3)

These and many other facts reveal that the City's purpose was to promote prayer and Christianity specifically. If a practice fails the purpose test, it is unconstitutional regardless of its "possible

---

[97] (Exs. 1 & 2) (Graham Dep. 29:11-25) (Guinn Dep. 135:9-12)
[98] (Graham Dep. 96:15-16; 100:24-15-101:1-13)

applications." *Santa Fe*, 530 U.S. at 314. The lack of secular purpose here "is dispositive." *Wallace v. Jaffree*, 472 U.S. 38, 56 (1985).

> **2. The Prayer Vigil had the unconstitutional effect of endorsing and promoting religion, as well as coercing citizens to participate in religious activity, thus failing *Lemon*'s effect prong.**

Regardless of the purposes motivating it, the Prayer Vigil obviously fails *Lemon*'s effect prong. The "effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval [of religion]." *Id.* at 56 n.42 (quotation marks omitted). The government is precluded "'from conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred.'" *Allegheny*, 492 U.S. at 593-94 (citation omitted).

The Eleventh Circuit has held that government action "facilitating any prayer clearly fosters and endorses religion over nonreligion." *Holloman*, 370 F.3d at 1288. In *Jager*, it made clear that whenever a prayer "occurs at a [government]-sponsored event . . . the *conclusion is inescapable* that the religious invocation conveys a message that the [government] endorses [it]." 862 F.2d at 831-32 (emphasis added). Indeed, a "religious service under governmental auspices *necessarily* conveys the message of approval or endorsement. Prevailing doctrine condemns such endorsement, even when no private party is taxed or coerced in any way." *Crestwood*, 917 F.2d at 1478 (citations omitted, emphasis added). The City facilitated prayer through its hour-long Prayer Vigil to hundreds of citizens. It therefore necessarily unconstitutionally endorsed religion.

The City's actions contravene even the most straightforward Establishment Clause principles. The "First Amendment was added to the Constitution to stand as a guarantee that neither the power nor the prestige of [government] would be used to control, support or influence the kinds of prayer the American people can say." *Engel*, 370 U.S. at 429-30. Thus, the City's "Prayer Vigil" was "inconsistent both with the purposes of the Establishment Clause and with the Establishment Clause itself." *Id.* at 433.

Furthermore, that the Prayer Vigil was led and promoted by the City's *police* department made it particularly coercive and alienating for non-Christians. Anyone opposing the Vigil

would have been publicly opposing the police. (Ex. 2). *See Lee v. Weisman*, 505 U.S. 577 (1992) (unconstitutional coercion may be found indirectly). Although "coercion is not necessary to prove an Establishment Clause violation," its presence "is an obvious indication that the government is endorsing or promoting religion." *Id.* at 604 (Blackmun, J., concurring).

In *Friedman v. Bd. of Cnty. Comm'rs*, the Tenth Circuit held that a county's a use of a seal bearing a Latin cross unconstitutionally endorsed religion. 781 F.2d 777, 781-82 (10th Cir. 1985). The court found it especially problematic the county "displays the seal on county vehicles and uses it to identify law enforcement officers." *Id.* This had implications beyond endorsement:

> A person approached by officers leaving a patrol car emblazoned with this seal could reasonably assume that the officers were Christian police, and that the organization they represented identified itself with the Christian God. A follower of any non-Christian religion might well question the officers' ability to provide even-handed treatment. A citizen with no strong religious conviction might conclude that secular benefit could be obtained by becoming a Christian.
>
> "When the power, prestige, and financial support of government is placed behind a particular religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain."[99]

The Ninth Circuit reached the same conclusion in *Ellis v. La Mesa*, finding that the cross insignia was "particularly troubling," because it was "displayed on police motor vehicles." 990 F.2d 1518, 1528 (9th Cir. 1993). The same concerns are present here but to a much greater degree. Whereas *Friedman* and *Ellis*, the policy passively displayed a logo on vehicles, the OPD promoted and led an entire Prayer Vigil with uniformed police personnel urging the public to pray.

That Plaintiffs and non-Christian citizens in fact felt affronted, threatened, and marginalized by the City's police department Prayer Vigil is borne out by the evidence.[100] One citizen posted on OPD's Facebook page: "why are the police asking us to pray? will they arrest us if we don't pray?" (Ex.2, p.3). Plaintiffs testified that the Prayer Vigil was coercive, in that it pressured community members to accept religious views and participate in religious exercise, necessarily portraying those who do not believe and do not participate in such religious exercises

---

[99] *Id.* (citing *Schempp*, 374 U.S. at 221; *Engel*, 370 U.S. at 430-31)
[100] (Ex. 2) (Exs. 24-36, 38) (Graham Dep. 33:22-25)

as outsiders and second-class citizens.[101]

The reasonable observer's impression of government endorsement is also heightened by the "history and context" of the City's actions leading up to the Prayer Vigil. *Green v. Haskell Cty. Bd. of Comm'rs*, 568 F.3d 784, 803 (10th Cir. 2009). Specifically, the observer would be aware of the City's refusal to cancel the event and take down the OPD letter "in the face of clearly voiced Establishment Clause concerns." *Id.* In "the face of strongly voiced religious endorsement allegations," a reasonable observer can properly consider "the government's decision to stand mute" and draw "inferences from that decision." *Id.* at n.12.

The City's actions here are so brazenly religious that factually identical cases are lacking, but a review of other cases that involve government prayer (even in a much less overt way) leads to the "inescapable" conclusion that the City's Prayer Vigil unconstitutionally endorsed religion. *Jager*, 862 F.2d at 831-32. For instance, in *Santa Fe*, the Court held that a school district unconstitutionally endorsed religion by merely allowing the senior class to elect other students to deliver a "brief invocation and/or message" at football games. 530 U.S. at 296-97, 309-10. Although any message would be student-led and student-initiated, and it was possible no prayer would ever be delivered, the Court found the policy unconstitutional as it "involves both perceived and actual endorsement of religion." *Id.* at 305, 310. The City's Prayer Vigil sent an even *stronger* message of religious endorsement. Whereas the prayers in *Santa Fe* were at least student-initiated and student-led, Ocala's Prayer Vigil was initiated and led by City officials, including the Chief and uniformed officers, with the Mayor's endorsement, *supra.*

In *Crestwood*, a village sponsored a three-day secular Italian Festival, which happened to include a private 45-minute mass that occurred simultaneously with other secular events. 917 F.2d 1476.[102] The Seventh Circuit held that the village violated the Establishment Clause, finding

---

[101] (Porgal Int. 15) (Rojas Int. 15) (L. Hale Int. 15) (D. Hale Int. 15). *See also* (Rojas Dep. 31:25-32:2, 70:3, 73:17-24); (Porgal Dep. 8:11-12, 13:2-11, 14:11-18, 16:18-21, 17:1-2, 20:3-6, 53:8-22); (L. Hale Dep. 25:15-21, 27:10-14, 27:22-25, 28:1-3) (D. Hale Dep. 13:1-13, 16:8-13, 18:6-9)

[102] *See id.* at 1489 (Coffey, J., dissenting) ("The plaintiff is suing because there is a short 45-minute event in a three-day festival")

it sufficient that a newspaper article had a headline: "Italian Mass to be celebrated at our Italian Fest." *Id.* at 1479. The court observed that the use of the word "our" implied that "the mass and Festival alike are under the Village's sponsorship." 917 F.2d at 1479. Thus, it concluded that the village unconstitutionally endorsed religion even though the "Women's Club is the true sponsor," and even though "the endorsement takes place in company with secular events." *Id.*

The same was true in *Hewett*, where the court held that a mayor and other city officials' involvement in an otherwise privately-sponsored, mostly *secular* event that merely included prayer, violated the Establishment Clause. 29 F. Supp. 3d at 633. Relying on *Crestwood*, the court concluded that the city unconstitutionally endorsed religion simply because its advertisement for one ceremony used the word "us" to describe the event. *Id.* at 635.

Similarly, in *Gilfillan*, a city unconstitutionally endorsed religion by funding part of a platform for the Pope's visit even though the event itself was organized and sponsored by the Archdiocese. 637 F.2d at 931. The city funded the platform for ostensible safety reasons: "the safety of the expected crowd, for which the City remained primarily responsible, would be endangered if the Pope were not visible to a large percentage of the persons in attendance." *Id.* at 937 (Aldisert, J., dissenting). Notably, the "mass would have occurred regardless of the [city's] expenditures, but may have been accompanied by tragedy." *Id.* at 939 (dissent). Nonetheless, the Third Circuit held that the "religious effect was both plain and primary." *Id.* at 931. It found that the Pope was "able to celebrate a Mass and deliver a sermon. In so doing, he brought a religious message, with the help of the City, from the Roman Catholic Church." *Id.*

The City's Prayer Vigil, to the extent it can be distinguished from the unconstitutional activities in *Crestwood*, *Hewett*, and *Gilfillan*, was far more flagrantly unconstitutional. Unlike in those cases, the City was the *sole* sponsor of the Prayer Vigil. Nor was the Prayer Vigil merely one small component of a much longer otherwise *secular* event as in *Crestwood* and *Hewett.* The entire event was religious and mostly Christian. And unlike *Gilfillan*, the Prayer Vigil would not have occurred regardless of the City's involvement, as the City's police department initiated and executed the entire event with the Mayor and Chief's oversight and encouragement.

The City's Prayer Vigil was also more brazenly unconstitutional than the prayer activities in *Milwaukee* where the Seventh Circuit held that a sheriff's department violated the Establishment Clause when its sheriff invited a private religious group to speak at the sheriff's department leadership conference. 588 F.3d at 524-26. The court found that the fact that the sheriff had invited them to speak signaled, "at the least, the appearance of endorsement by the Sheriff's Department." *Id.* at 528-29. Here, the City did not merely appear to endorse religion through private parties but did so by having *its own* uniformed police personnel leading the public in prayer. Moreover, whereas *Milwaukee* was confined to employee gatherings, the religious activity here was directed to the entire community. *See Gilfillan*, 637 F.2d at 930-31.

Even the City's communications promoting the Prayer Vigil unconstitutionally endorsed religion, without more. *E.g.*, *Newman*, 181 F. Supp. 2d at 1379-80; *Am. Atheists, Inc. v. City of Starke*, 2007 U.S. Dist. LEXIS 19512, at *18 (M.D. Fla. 2007) ("the words 'STARKE' and the Cross on the water tower clearly communicates the City's endorsement of Christianity"). The "*mere appearance* of a joint exercise" between "Church and State" is unconstitutional. *Larkin v. Grendel's Den*, 459 U.S. 116, 125-26 (1982) (emphasis added).

> [A]n important concern of the effects test is whether the *symbolic union* of church and state effected by the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices.

*School Dist. v. Ball*, 473 U.S. 373, 390 (1985) (internal citation omitted, emphasis added).

Rojas testified that that the word "blessing" in OPD's letter signed by the Chief on OPD letterhead, combined with "fervent prayer," by itself, sent a hostile message to atheists because "Nonreligious people do not bless." (Rojas Dep. 15:6-16). He reiterated: "Atheists don't pray, they don't bless." (*Id.* 70:3). Mr. Hale similarly testified that the "blessing" language is a greeting "that would not be welcomed by all." (D. Hale Dep. 16:8-13, 22:17-20). Mrs. Hale testified that she did not feel the letter "had to do with all of the citizens because all of the citizens do not pray." (L. Hale Dep. 25:15-21). She added, "I don't bless someone even if they sneeze." (*Id.* 27:12-14). Porgal testified that "blessings" do "not go out to atheist groups."

29

(Porgal Dep. 53:10-14). She felt that this letter was "more geared toward the Christian community than anyone else." (*Id.* 53:21-22). *See also* (D. Hale Dep. 13:10-13) (same).

In *Newman*, the court, relying on Eleventh Circuit cases, held that a mayor's "prayer breakfast" violated the Establishment Clause under the effect prong. 181 F. Supp. 2d at 1379-80. The evidence of city-sponsorship consisted of: (1) "a letter from the Mayor on City of East Point letterhead;" (2) a letter from the Mayor addressed to "friends of the community;" and (3) a "flyer that was distributed at a City of East Point sponsored holiday party." *Id.* at 1381.[103]

A much stronger link between church and state was formed by Ocala's actions because in addition to *promoting* the Prayer Vigil the City *initiated*, *organized* and *led* the vigil as well. Uniformed OPD personnel took the stage and delivered prayers and sermons alongside Christian clergy with the Mayor and Chief's approval. *E.g.*, (D. Hale Dep. 48:10-12, 49:2-10) (describing OPD personnel sharing the stage with a Christian minister with a "cross around his neck."). Thus, unlike *Newman*, the City's Prayer Vigil produced not just the "mere appearance" of religious endorsement but an "actual joint exercise of governmental and religious authority." *Commack Self-Service Kosher Meats, Inc. v. Weiss*, 294 F.3d 415, 431 (2d Cir. 2002).

Prayer at a government-sponsored event "sends the ancillary message to members of the audience who are nonadherants 'that they are outsiders, not full members of the political community.'" *Santa Fe*, 530 U.S. at 309-10 (citation omitted). By organizing a Prayer Vigil, partnering with Christian clergy and leading prayers for the citizenry, the City sent "the message that it is closely linked" with Christianity and "that it favors the religious over the irreligious." *Does 1 v. Enfield Pub. Sch.*, 716 F. Supp. 2d 172, 192 (D. Conn. 2010). "This message violates the Establishment Clause." *Trunk v. City of San Diego*, 629 F.3d 1099, 1125 (9th Cir. 2011).

Once again, the evidence bears out that both atheists and Jews in fact felt excluded by the City's communications promoting the Christian prayer event and the event itself. (Exs. 2 & 53). As Porgal testified: "When that letter was posted, I did not feel that included our community."

---

[103] *See also Hewett*, 29 F. Supp. 3d at 635 (city unconstitutionally endorsed private Veterans Day ceremony that included prayer based on a city advertisement using the word "us")

(Porgal Dep. 53:10-11). She added: "It was bad enough that the chief had on it; but then when you allow someone who is associated with a church, when you're talking about a prayer vigil, then I think it just compounds what, to me, was already a problem." (Porgal Dep. 20:3-6). Mrs. Hale testified: "this letter was on a public Facebook page that was designed for the police department that holds sway every time I come into the City of Ocala to run my errands and what it is saying to me is that there's a special place for religious people in this city. It does not include me." (L. Hale Dep. 27:22-25, 28:1-3). Rojas testified: "It does hurt me to see my police department, as someone who is supposed to represent us all, not represent me. That hurts." (Rojas Dep. 31:25-32:1-2).

Unfortunately, the City fails to "appreciate the impact of its view upon adherents of minority faiths." *Joyner v. Forsyth Cnty.*, 653 F.3d 341, 354-55 (4th Cir. 2011). It has dismissed Plaintiffs' "sensitivities as essentially of no moment. This is not right." *Id.*[104] Citizens should come to government events "confident in the assurance that government plays no favorites in matters of faith but welcomes the participation of all." *Id.*

### 3.  The Prayer Vigil unconstitutionally entangled the City with religion.

When, as here, a "City, through the acts of the Mayor or any other city official acting in their official capacity as a representative of the City, has participated in conveying religious messages," it fosters "excessive entanglement in the religious activities" thus failing *Lemon*'s third prong. *Hewett*, 29 F. Supp. 3d at 635 (holding that "the City's organization and arrangement of the religious speakers;" "advertisement of the annual commemorative events by using words such as 'us';" "disclosing religious messages, through its City officials, as part of the prayer practices at the annual commemorative events . . . excessively entangle[s] the City with the religious messages conveyed"). *See also Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, 385 (6th Cir. 1999) (finding excessive entanglement where "the school board decided to include prayer" and "chose which member from the local religious community would give those

---

[104] (Guinn Dep.99:4-100:6, 104:12-20) (Graham Dep. 47:12-20, 89:10-90:23)

prayers"); *Gilfillan*, 637 F.2d at 931 ("relationship between the City and the Archdiocese [in connection with the event] constituted entanglement in violation of the third part [of *Lemon*]"). Indeed, because a Prayer Vigil is inherently religious, the City's actions in organizing and sponsoring it necessarily entangled it with religion. *Constancy*, 947 F.2d at 1151-52 (when "a judge prays in court, there is necessarily an excessive entanglement of the court with religion.").

Having shown that the City's actions are unconstitutional under *each* prong of the disjunctive *Lemon* test, governing precedent dictates that nominal damages are mandatory.[105]

**V. Plaintiffs are entitled to summary judgment against the Mayor and Chief because their actions in organizing, promoting, and leading the Prayer Vigil violated the Establishment Clause.**

**A. Plaintiffs must be awarded nominal damages against the Mayor and Chief.**

Plaintiffs are entitled to nominal damages against the Mayor and Chief because they violated the Establishment Clause for the same reasons set forth above. This Court previously and correctly denied their qualified immunity defense. (Doc. 14 at 24). Neither the Mayor nor the Chief appealed the decision. No additional evidence exists to establish that they are entitled to qualified immunity now.[106] In fact, the uncontroverted evidence reveals even further involvement of the Mayor and Chief in the unconstitutional activities than that which was before the Court on motion to dismiss, *supra* Statement of Undisputed Facts.

Furthermore, to "even be potentially eligible for . . . qualified immunity, the official must have been engaged in a 'discretionary function[.]'" *Holloman*, 370 F.3d at 1263-64 (citations omitted). It "is the burden of the governmental official to make this showing." *Id.* The Mayor and Chief have failed to satisfy their initial burden. The courts must be sure "not to characterize and assess the defendant's act at too high a level of generality." *Id.* at 1266. Employment by a "government is not a carte blanche invitation to push the envelope and tackle matters far beyond

---

[105] Nor can municipal liability seriously be disputed. *E.g.*, *Hewett*, 29 F. Supp. 3d at 643; *Milwaukee Deputy Sheriffs Ass'n v. Clarke*, 513 F. Supp. 2d 1014, 1022, n.10 (E.D. Wis. 2007) ("Clarke [the sheriff] and (through Clarke) Milwaukee County are primarily responsible for the constitutional violation.")

[106] *See, e.g.*, *McMillan v. Dep't of Corr.*, 2016 U.S. Dist. LEXIS 98203, at *34-35 n.5 (N.D. Fla. July 8, 2016) (where defendant was denied qualified immunity on motion to dismiss, defendant carried burden of re-invoking the defense on summary judgment and carrying initial burden of proof)

one's job description or achieve one's official goals through unauthorized means. Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity." *Id.* at 1267. It goes without saying that government "employees have no right to make the promotion of religion a part of their job description." *Grossman v. S. Shore Pub. Sch. Dist.*, 507 F.3d 1097, 1099 (7th Cir. 2007).

Regardless, Plaintiffs have already satisfied their shifting burden of demonstrating: "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264. This Court properly found that at the time of the Prayer Vigil, the Mayor and Chief violated the Establishment Clause at "the most fundamental level." (Doc 14 at 24).

The cases discussed above are "sufficiently specific as to give the defendants 'fair warning.'" *Id.* at 1278. This is not a close case either. Indeed, this Court already properly found that the "conduct 'lies so obviously at the very core of what the Establishment Clause prohibits that the unlawfulness of the conduct'" would be readily apparent to them *even in the absence* "'of fact-specific law.'" (Doc. 14 at 23-24). A "reasonable person with a basic understanding of Establishment Clause jurisprudence would easily have predicted that this proceeding would conclude with a determination that the [Prayer Vigil and related activities] was unconstitutional." *Summers*, 669 F. Supp. 2d at 666-70. *See Holloman*, 370 F.3d at 1263 (teacher was "not even potentially entitled to summary judgment on qualified immunity grounds against [student's] Establishment Clause claims").[107] Thus, they are liable for at least nominal damages.

### B. Plaintiffs are entitled to punitive damages against the Mayor and Chief due to their flagrant indifference to Plaintiffs' First Amendment rights.

The Mayor and Chief's "reckless and callous indifference to the federally protected rights of others" makes them liable for punitive damages. *Smith v. Wade*, 461 U.S. 30, 56 (1983).[108] Not only did they violate well-settled constitutional rights, *supra*, but they did so in the

---

[107] *See also Inouye v. Kemna*, 504 F.3d 705, 717 (9th Cir. 2007); *Am. Humanist Ass'n v. United States*, 63 F. Supp. 3d 1274, 1286 (D. Or. 2014)

[108] *See Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991) (same)

face of repeated *actual* warnings from counsel that their conduct was violating the Establishment Clause. (Ex. 30) (Supp. Int. 22). Both willfully eschewed these warnings, not even bothering to consult with their own attorneys, a level of defiance that can only be seen as contempt for their Establishment Clause obligations.[109] At a minimum, their flagrant disregard of the First Amendment elevates the need "to deter future egregious conduct." *Santamaria v. Dallas Indep. Sch. Dist.*, 2006 U.S. Dist. LEXIS 83417, at *166-70 (N.D. Tex. 2006) (punitive damages where official's conduct during litigation was probative "she was not acting in good faith").

"Willful and deliberate behavior on the part of an infringing defendant allows the court to fashion the appropriate deterrent remedy." *Polo Fashions, Inc. v. Rabanne*, 661 F. Supp. 89, 96 (S.D. Fla. 1986).[110] A plaintiff is not required to specifically plead punitive damages to be entitled to such an award. *See, e.g.*, *Scutieri v. Paige*, 808 F.2d 785, 790-90 (11th Cir. 1987); *Guillen v. Kuykendall*, 470 F.2d 745, 748 (5th Cir. 1972) ("It is not necessary to claim exemplary damages by specific denomination") (citations omitted).[111]

In the present case, nominal damages alone will likely "fail to serve as a convincing deterrent." *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir. 1982). Significantly, the Mayor has not shown a scintilla of remorse for infringing upon Plaintiffs' First Amendment rights. On the contrary, his actions even throughout litigation reflect "a reckless indifference" to the Constitution. For instance, even though this Court had already made clear that a government-sponsored Prayer Vigil violates well-settled First Amendment rights (Doc. 14 at 19-20), the Mayor subsequently testified that it would be acceptable for the OPD to host another prayer vigil and to post another letter asking for "fervent prayer" on official OPD letterhead. (Guinn Dep. 135:4-12). The Mayor also indicated he is taking a stand for Christianity and feels that the "Christian community" needs to oppose the atheists who object to

---

[109] (Graham Dep. 136:23-137:3) (Guinn Dep. 27:2-6, 47:8-17)
[110] *E.g.*, *M.B. v. Rankin Cnty. Sch. Dist.*, 2015 U.S. Dist. LEXIS 117289, at 34 (S.D. Miss. 2015) (ordering district to pay plaintiff $7,000 for violating the Establishment Clause and imposing a fine of $10,000 per infraction for future Establishment Clause violations)
[111] *See also Hetrick v. Ideal Image Dev. Corp.*, 2009 U.S. Dist. LEXIS 2083, at *6 (M.D. Fla. 2009)

the OPD's involvement in the Prayer Vigil. (Guinn Dep. 101:4-22). Such facts justify a punitive damage award in this case. *E.g.*, *Castro v. Cnty. of L.A.*, 797 F.3d 654, 669 (9th Cir. 2015) (officials were liable for punitive damages where they demonstrated callousness by their lack of remorse); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 438 (7th Cir. 1997) (same).

The Chief was just as reckless and callously indifferent. He posted the letter encouraging "fervent prayer," refused to take it down, allowed an email to all OPD Chaplains ordering their attendance at the Prayer Vigil in uniform, and authorized them to preach from the stage.  Most of this was done *after* the Chief and Mayor received numerous warnings. Thus, like the Mayor, the Chief's "wrongdoing was more than mere accident. There was evidence that, in the face of repeated warnings," he intentionally violated the Establishment Clause by promoting, organizing, and leading a Prayer Vigil.  *Bogle v. McClure*, 332 F.3d 1347, 1361 (11th Cir. 2003).

## CONCLUSION

This Court soundly determined that a government-sponsored Prayer Vigil violates the Establishment Clause. The City, its Mayor and Police Chief, initiated, organized, promoted, and led a predominantly Christian Prayer Vigil even after receiving repeated warnings that doing so violates the Establishment Clause. Rather than cease their unconstitutional activity, the City and its officials publicly and proudly flouted the warnings, doubling down on their previous efforts and willfully trampled upon the constitutional rights of Plaintiffs and other religious minorities.

The material facts are undisputed and lead to only one conclusion: Plaintiffs are entitled to summary judgment as a matter of law. Consequently, Plaintiffs respectfully request that this Court grant their motion for summary judgment in its entirety and award:

- each Plaintiff $1 in nominal damages from each Defendant (City, Mayor, and Chief)
- punitive damages against the Mayor and Chief
- plaintiffs their reasonable attorneys' fees and costs under 42 U.S.C. § 1988.[112]

---

[112] The Eleventh Circuit has defined a prevailing party as "usually the litigant in whose favor judgment is rendered . . . even though he has not sustained all his claims." *Reider v. R.J. Reynolds Tobacco Co.*, 5 F. Supp. 3d 1334, 1337 (M.D. Fla. 2014) (citation omitted). A finding of liability but no compensatory damages is sufficient to support prevailing party status so long as nominal damages are awarded. *Id.*

Respectfully submitted,

September 19, 2016

<div style="margin-left:2em">

s/ Monica L. Miller
MONICA L. MILLER, Esq.
American Humanist Association
1777 T Street N.W., Washington, DC, 2009
*phone* (202) 238-9088
mmiller@americanhumanist.org
CA Bar: 288343 / DC Bar: 101625

DAVID A. NIOSE
American Humanist Association
1777 T Street N.W., Washington, DC, 2009
*phone* (202) 238-9088
dniose@americanhumanist.org
MA Bar: 556486 / DC Bar: 1024530

HEATHER MORCROFT
331 S. Wymore Road
Winter Park, FL 32789
*phone* (407) 325-0585
hmorcroft13@gmail.com
FL Bar: 0709859

**ATTORNEYS FOR PLAINTIFFS**

</div>